**KARRELL v. UNITED STATES.**

No. 12199.

United States Court of Appeals
Ninth Circuit.

April 24, 1950.

John W. Preston, Los Angeles, Cal., for appellant.

Ernest A. Tolin, U. S. Atty., Ray M. Steele and Paul Fitting, Assts., Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Barbara Karrell was convicted by court and jury upon Counts Two, Four, Five, Six, Nine, Eleven, Twelve, and Fourteen of an indictment charging her in separate counts with 17 alleged offenses against the United States under Sections 697 and 715 of Title 38, U.S.C.A. All other counts had been dismissed before trial. The court granted a motion for judgment of acquittal after verdict as to Counts Two and Five. The counts are the same except as to names, dates of events, description of properties and amounts involved. Count Four is quoted in the margin as illustrative [1]

[1] "On or about October 22, 1946, in Los Angeles County, California. within the Central Division of the Southern District of California, defendant Barbara Karrell did knowingly cause to be made a false certificate and paper concerning

Appellant was sentenced to imprisonment for one year and to pay a fine of $1,000 as to each of such six convictions; that appellant be imprisoned until such fines are paid; and that the several periods of imprisonment shall run concurrently. All sentences were suspended and appellant was placed on probation for five years upon the conditions, among others, that she make restitution to each of eighteen designated veterans of listed overpayments made by them to her, aggregating $7,300, and that she pay a fine of $2,700 to the United States. The defendant appeals from the judgment and sentence.

When the Government entered upon the guaranty of home loans to service men and women, it did so in the knowledge that banking practices practically did not meet the housing situations faced by many. Accordingly it provided for the guaranty of loans made by banks. Among the conditions of the guaranty laid down by the Government was one requiring that all of the proceeds of the loan should be used in payment for the housing unit [38 U.S.C.A. § 694a (1)] and that the price paid or to be paid therefor must not exceed the reasonable value of the unit as found by an official appraisal [38 U.S.C.A. § 694a (3)].

We quote Section 694a, Title 38, U.S. Code:

"Loans for homes. Any loan made to a veteran under this subchapter, the proceeds of which are to be used for purchasing residential property or constructing a dwelling to be occupied as his home or for the purpose of making repairs, alterations, or improvements in property owned by him and occupied as his home, is automatically guaranteed. if made pursuant to the provisions of this subchapter, including the following:

"(1) That the proceeds of such loan will be used for payment of the property purchased or constructed or improved;

"(2) That the contemplated terms of payment required in any mortgage to be given in part payment of the purchase price or the construction cost bear a proper relation to the veteran's present and anticipated income and expenses; and that the nature and condition of the property is such as to be suitable for dwelling purposes; and

"(3) That the price paid or to be paid by the veteran for such property or for the cost of construction, repairs, or alterations does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator."

 It will be seen that there is no prohibition in § 694a against the purchase of a housing unit for more than is borrowed provided the appraisal is equal to the money borrowed plus the amount paid in addition thereto.

Brief reference to facts of the case is necessary. In 1946 appellant purchased lots in a certain California residential tract for the purpose of resale and, after determining that the lots were suitable for veterans' homes, began selling to such class of purchaser. The veteran would contract to purchase a lot from appellant, and appellant would in addition sign him up to a

a claim for benefits under the Servicemen's Readjustment Act of 1944, 38 U.S.C.A. § 694 et seq., in that defendant did cause the Bank of America, National Trust and Savings Association, 1358 Third Street, Santa Monica, California Branch to certify in a Home Loan Report presented to the United States Veterans Administration that the price paid by Philip Bentivegna, a veteran of World War II, for the purchase of a residential lot at 4907 Beloit Avenue, Los Angeles, California, as to which a loan guarantee was sought from the Government of the United States, was $1,550.00 and that the price paid by said veteran for such property did not exceed the reasonable value thereof of $1,650.00, as determined by proper appraisal dated July 24, 1946, made by Robert E. Gilliland, an appraiser designated by the Administrator of Veterans' Affairs; whereas as defendant well knew and caused to be concealed from said bank and Veterans Administration, the total price demanded and received by the defendant from said veteran for such property was $2,150.00 and did exceed the reasonable value thereof as determined by a proper appraisal."

contract for the construction of a house thereon to be built by a designated company. The purchase of the lot and the contract to build constituted a "package" deal. Each transaction was handled through escrow at the Pico-La Cienega branch of the Bank of America and loans were then arranged through the Santa Monica branch of the same bank. It was the latter branch of the bank which forwarded to the Veterans Administration a statement of the various transactions.

Of the six transactions referred to in the counts upon which appellant was convicted, five were handled by means of double escrows. In the other transaction [called the Kornfeld deal] a single escrow was utilized.

Where double escrows were used, appellant would execute a deed to a dummy who in turn would execute a deed of the property to the veteran. The escrow instructions accompanying the deed to the dummy would recite the actual price to be paid by the veteran and also amounts paid appellant out of escrow. The instructions accompanying the deed from the dummy to the veteran would recite, as the total price to be paid by the veteran, the actual purchase price less the sum paid in cash to appellant outside escrow. The Pico-La Cienega bank branch would forward to the Santa Monica bank branch only the escrow instructions revealing the deed from the dummy to the veteran and consideration therefor. By this devious method a certificate was furnished the Veterans Administration falsely showing the purchase price to be less than the true purchase price.

In the one instance of a single escrow, no dummy was utilized. The escrow instructions did not show the real purchase price but falsely showed the purchase price to be the true price less the sum paid appellant outside of escrow. As to this transaction appellant testified that she informed

employees of the Pico-La Cienega bank branch of the amount paid out of escrow.

The Santa Monica bank branch in each instance filed a Home Loan Report with the Veterans Administration in which it certified that "the price paid or to be paid by the veteran for such property * * * does not exceed the reasonable value thereof as determined by proper appraisal * * *."

In our case it is the view of the Government, and evidently of the jury as well, that the defendant-appellant knew, or in good reason believed, that the appraisal would be less than the sum of the loan together with the additional money paid. The double escrows and the single untruthful escrow statement in one instance were used to conceal the fact that this requirement was lacking. The reason for subdivision 3 of § 694a of course is plain. The Government would not assist in a transaction where the veteran was not getting his money's worth. Appellant claims several reversible errors and we shall discuss them each under appropriate subheadings.

### Do the Acts Charged Constitute a Federal Offense?

A similar indictment recently before this court was held to charge an offense. In Young v. United States, 9 Cir., 1949, 178 F.2d 78, 80, certiorari denied 1950, 70 S.Ct. 573, we decided a like point. It was there urged "that Congress has failed to denounce the act charged in the indictment as a crime," and even if an attempt to accomplish this purpose is manifest, such intention is not expressed in clear and unequivocal language." We ruled that congress intended to incorporate by reference the penal provisions of Section 715[2] of Title 38 U.S.C.A., into the Servicemen's Readjustment Act of 1944, 38 U.S.C.A. § 694 et seq., and that such purpose was

2. 38 U.S.C.A. § 715, insofar as is pertinent, reads as follows: "Any person who shall knowingly make or cause to be made, or conspire, combine, aid, or assist in, agree to, arrange for, or in any wise procure the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, or writing purporting to be such, concerning any claim for benefits * * * shall be guilty of a misdemeanor * * *."

accomplished by Section 697[3] of Title 38 U.S.C.A.

In a supplemental brief, appellant contends the indictment is defective because it concerns and alleges transactions for the purchase of vacant lots alone. The Act provides for loan guaranties where the proceeds "are to be used for purchasing *residential property* or constructing a dwelling to be occupied as his [the veteran's] home or for the purpose of making repairs, alterations, or improvements in property owned by him and occupied as his home * * *." 38 U.S.C.A. § 694a. [Emphasis ours.] No definition of "residential property" appears in the Act. The Administrator of Veterans' Affairs, however, has defined such terms by regulation in part as "any land to be purchased * * for the construction of a dwelling, and on which such dwelling is to be erected. 38 C.F.R. 36.4301(ee); 11 F.R. 2118-9.[4] Appellant contends for a more limited construction and that "residential property * * * means * * * a piece of real estate upon which is located a suitable home for the Veteran." We think the Administrator's construction the proper one.[5]

### Was Appellant a Mere Aider and Abettor?

Appellant contends that the indictment charges appellant with having aided and abetted the Bank in the commission of a criminal offense. Because the Bank is alleged in effect to be innocent, she says that her conviction cannot stand for the reason that the indictment fails to charge criminal concert on her part with the principal [i. e., the Bank]. The law requires a guilty principal before the aider and abettor can be punished. But, the indictment charges that appellant "did knowingly cause to be made a false certificate and paper concerning a claim for benefits under the Servicemen's Readjustment Act * * *." Section 715, supra, reads in part as follows: "Any person who shall knowingly make or *cause to be made* * * a false * * * certificate * * * or paper * * * concerning any claim for benefits * * * shall be guilty of a misdemeanor * * *." [Emphasis added.] More than one person can be involved in causing a false certificate to be made to the Government. We hold the indictment sufficient as, it will be noticed, the appellant is charged as a principal. See United States v. Selph, D.C.S.D.Cal. 1949, 82 F.Supp. 56.[6]

### Does the Evidence Support the Verdict and Judgment?

It is insisted that the evidence is insufficient to sustain the allegations of the indictment or to support the verdict and

---

**3.** 38 U.S.C.A. § 697 reads in part, "Except as otherwise provided in this chapter, the * * * penal provisions under sections * * * 712-715 * * * of this title, shall be for application under this chapter. * * *."

**4.** The lots purchased from appellant were part and parcel of a so-called package deal whereby in addition to contracting to purchase a lot each veteran signed a contract for the erection of a house thereon. The loans in question covered both house and lot.

**5.** Perhaps it is true that prior to March 1, 1946, the Administrator had not authorized the guaranty of loans for the purchase of residential lots. See 38 C.F.R. 36.4000 (j). But the regulation quoted in the text above was promulgated and became effective as of such date. As to the Administrator's authority to promulgate rules and regulations, see 38 U.S.C.A. § 694 d. The various sales with which the instant indictment is concerned occurred subsequent to such date.

Further, appellant points out that the Home Loan Report [VA Form 4-1820] blanks furnished by the Veterans Administration contain no place to insert the cost of a vacant lot. This is true, but it is as true that there is no space entitled "cost of house." The reverse side of such form has a place for a breakdown as to disbursement of loan proceeds only.

**6.** In this phase of her argument, appellant also asserts that concealment [she is charged with causing the true price paid her by each veteran "to be concealed from said bank and Veterans Administration"] connotes not the affirmative action required to tie in an aider and abettor with a principal. It is said that concealment involves inaction or passive action, not affirmative action. While our conclusion that appellant is charged as a

judgment. In the main the argument is that the proof clearly discloses that the lender was not deceived. It is true that information furnished the Bank through both branches constituted a full statement of the facts. But this is beside the point. The method used, which was initiated and made possible by appellant, was for the purpose of securing a false report to go to the Government and it was highly successful. Such a false report would, of course, indicate that the loan could be made without violation of the statute which provides that the price shall not exceed the appraised value of the lot purchased.

It is of no particular importance that the appellant did not know exactly what the appraisal would be. She was no doubt acquainted with values of the property she was dealing in and knew something of its appraisal value. Whether she estimated the appraisal value accurately or not does affect the result. She desired a false report to go from the lending bank to the Government officials who passed upon the loans and in some manner procured the bank to cooperate in her scheme to accomplish this end.

Even assuming that the lender was culpable, appellant's conviction is not invalidated. Appellant admitted knowing that the property purchases were to be financed by so-called G.I. loans. She admitted filling out the blank escrow instructions herself and having them delivered to the Pico-La Cienga bank branch Appellant is a business woman. She knows something of real estate law and of custom as to escrows as a licensed California broker.

There is substantial evidence in the record in support of the jury's verdict.

### As to Restitution as Condition of Probation.

Appellant contends that the conditions of the district court's probation order violated Section 3651 of the new Federal Criminal Code, Title 18, U.S.C.A., effective September 1, 1948. Section 3651 provides generally that imposition or execution of sentence may be suspended and the defendant may be placed on probation "upon such terms and conditions as the court deems best." Specifically it provides in part that "While on probation and among the conditions thereof, the defendant * * * May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; * * *."

It will be recalled that appellant was charged upon an indictment containing seventeen counts, each of which concerned a different veteran and that appellant was acquitted by the trial judge's order on two counts, judgments of guilty were entered against her on six counts, and nine counts were dismissed. The court imposed a sentence of fine and imprisonment, suspended the sentence, and placed appellant on probation ordering her among other things to pay a fine and to make restitution of a certain amount to each of the seventeen veterans named in the indictment and also to an additional veteran not named in the indictment.

The Government argues that appellant cannot now question the validity of such order because no objection to it was made at the time sentence was imposed nor was the error specified in appellant's statement of points on appeal. But where the error is plain and transcends the legal power of the court which made it we may notice it.

Our interpretation of Section 3651 is that congress intended to restrict the scope of the restitution which could be ordered to the limitation contained in the specific provision above quoted.[7] It is a familiar rule of statutory interpretation that a specific provision will govern

---

principal renders the argument hypothetical, it should be mentioned that in our opinion concealment is not necessarily or always passive.

**7.** Our conclusion is somewhat supported by other parts of Section 3651 of the new Federal Criminal Code. Therein power is granted to place a defendant on probation "for such period * * * as the court deems best." Notwithstanding such generality, "The period of probation, together with any extension thereof, shall not exceed five years."

even though general provisions, if standing alone, would include the same subject. The statute which was replaced by Section 3651 [namely, 18 U.S.C. (1946 ed.) § 724] and which contains identical language has been so interpreted by United States Circuit Judge Maris sitting as a trial judge in United States v. Follette, D.C.E.D.Pa. 1940, 32 F.Supp. 953. Similar statutory language has received a like construction. See People v. Funk, 1921, 117 Misc. 778, 193 N.Y.S. 302.[8] We are in agreement with the reasoning in the Follette case and therefore hold that the trial court erred in ordering restitution as to losses sustained by any veteran other than one directly concerned in the six counts upon which appellant stands convicted. The trial judge used as the measure of restitution to be ordered, the sum paid by the veteran over and above the reported or false purchase price. But restitution in the sense the word is used here means giving back the sum paid by the veteran over and above the value of the thing he got. The value of the thing he got is the sum it was appraised at. Therefore, the sum which can be ordered restored to the veteran as restitution is the difference between the appraised value and the actual purchase price.

It may be argued that since congress did not make it illegal for a veteran upon his own volition to pay more for a house unit than its appraisal value, it follows that the sum paid above the appraisal cannot be considered as a loss by the veteran. But the deal from start to finish is one under governmental paternal help to a person who has been taken from the normal pursuits to service for his country in a time of stress. He was entitled to the full protection of the statute and it is no far cry to hold that the sum paid to appellant outside of escrow does represent, at least in round numbers, the amount of money the veteran paid over and above the amount he would have paid had the purchase not

been tinted by the methods used to conceal the actual facts.

The cause is remanded to the trial court with instructions to amend the probation order by limiting the restitution to the damages suffered by the veteran named in each of the six counts of the indictment as to which appellant stands convicted and by limiting such damages to the difference between the appraisal value of the several lots and the actual sales price paid therefor. Upon the amendments being made the case will stand affirmed.

Remanded for modification and affirmed.

---

8. Even where a statute contained no limiting provision but simply conferred on the court the power to place the convicted person upon probation "upon such conditions * * * as it may prescribe," at least one court has held that definitely restitution must be limited to the "loss sustained as a direct consequence of the commission of the particular crime of which the respondent stands convicted." See State v. Barnett, 1939, 110 Vt. 221, 3 A.2d 521, 525.