UNITED STATES of America, Appellee,

v.

Tom E. TILER, Roy Y. Sakai and Ty-Sak Agencies, Ltd., Appellants.

No. 1104, Docket 79–1125.

United States Court of Appeals, Second Circuit.

Argued June 1, 1979.

Decided June 18, 1979.

H. Kenneth Schroeder, Jr., Buffalo, N.Y. (Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., Michael A. Brady, of counsel), for appellants.

Kenneth A. Cohen, Asst. U. S. Atty., Buffalo, N.Y. (Richard J. Arcara, U. S. Atty., W. D. of New York, Buffalo, N.Y., of counsel), for appellee.

Before FRIENDLY, FEINBERG, Circuit Judges, and NEAHER, District Judge.*

FEINBERG, Circuit Judge:

Appellants Tom E. Tiler and Roy Y. Sakai attack the legality of sentences imposed upon them by Judge John T. Elfvin in the United States District Court for the Western District of New York, after appellants pleaded guilty to one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371 by evading import duties. The judge sentenced each appellant to one year in the custody of the Attorney General and a $10,000 fine. Imposition of such custody was suspended and appellants were placed on probation for three years with the condition that appellants deposit $100,000 with the clerk of the court as reparations to the government for duties evaded. It is this latter condition of their sentences that appellants Tiler and Sakai challenge and seek to have stricken. Alternatively, they seek to withdraw their guilty pleas.[1] We affirm the refusal of the district court to change appellants' sentences as well as the denial of their motion to withdraw the guilty pleas.

I

Appellants Tiler and Sakai, and their corporate entity, appellant Ty-Sak Agencies, Ltd., were, and apparently still are, in the business of importing certain goods manufactured in Japan into this country through Canada. In particular, during the relevant period as defined in the indictment, appellants imported woven polyethylene sheeting with the aid of Takashima & Co., Ltd., a Japanese trading house. Polyethylene sheeting consists of a woven or knit fabric, which is then coated or filled with rubber or plastic material. The rate of import duty varies considerably, according to the indictment, depending on the ratio by weight of the coating to the fabric. Specifically, under the regulations in effect at the relevant times, if the coating was over 70 percent of the sheeting by weight, the duty was 7 percent ad valorem. If less than 70 percent, the duty was 15 cents per pound plus 18 percent ad valorem.

Appellants were charged in a thirteen-count indictment. The lengthy and detailed first count alleged a conspiracy to misrepresent "the qualities of imported polyethylene

---

1. Ty-Sak Agencies, Ltd., the corporate entity of appellants Tiler and Sakai, was fined $10,000 on its guilty plea to the same conspiracy count, and joined in the motion to withdraw the pleas.

sheeting" in order to pay the lighter duty, and specified as overt acts, among other things, the avoidance of a total of about $523,000 in import duties over the course of about six years. The next six counts charged knowing effectuation of entry of goods at an improperly low tariff in violation of 18 U.S.C. § 541, with a total of about $67,000 in illegally avoided import duties. The last six counts charged introduction of goods into the United States by fraud in violation of 18 U.S.C. § 542. Takashima, the Japanese trading house involved, was not charged, but had settled all civil and criminal liability in exchange for a payment of $100,000 to the Government.

On or about the date set for trial, June 27, 1978, appellants' attorney and the government reached a tentative plea agreement whereby appellants would plead guilty to the conspiracy count, no incarceration would be imposed, and the government would move to dismiss the remaining counts in the indictment. The agreement was proffered to Judge Elfvin on that day, who indicated that he would decide whether to accept it after reviewing a presentence report not as yet prepared. The judge conducted the preliminary allocution at that time, and did accept the guilty plea of the corporation only, since the presentence report could have no bearing on it. The judge postponed to July 31 consideration of whether to accept the guilty pleas of the individual appellants.

By July 31, the judge had reviewed the presentence report, and at that time indicated that the provision of no incarceration, as well as the balance of the agreement, was acceptable to him. However, he raised, apparently for the first time, the idea of imposing "a special condition of . . . probation . . . that the defendant should make reparations or restitution to any party who was actually damaged or experienced any loss . . . on account of the particular crime for which the individual had been convicted by trial or plea . . . ." In that regard, the judge observed "that there is a limitation upon that, namely that any such loss . . . would have to be . . . actually determined

by your . . . acquiescences in the amount or by . . . judicial or semi-judicial determination . . . ." The judge then noted, "That is a ceiling or a limitation on my power to impose reparations or restitutions as part of any probation." The proceedings were then adjourned until August 7 in order to give appellants' attorney a chance to analyze the legality of the new condition, and to reassess whether appellants should plead guilty.

On August 7, prior to the taking of the pleas, the judge referred again to the restitutionary condition of probation, reiterating that the maximum he could impose would be the total damages to the United States government on account of the crime to which appellants pleaded guilty, that within that limit he could "impose some shorter or less tall ceiling," and that in any event such liability could only be imposed to the extent that the government's actual damages exceeded $100,000, the amount of the Takashima settlement. Appellants' attorney argued that any condition for restitution from appellants be limited to $100,000, referring to the amount of the Takashima settlement. The judge characterized the argument as one for leniency, and made it clear that he thought he had the power to impose an obligation to make restitution in an amount equal to the total loss to the government, reduced by the $100,000 received from Takashima, even if that actual loss far exceeded $200,000. There was also an outline by the government attorney of the procedure the government would follow in establishing its loss or damages, which would clearly take a considerable period of time.

The judge then accepted the pleas of guilty from Tiler and Sakai. They were then each sentenced to a fine of $10,000, a suspended term of a year in the custody of the Attorney General, and probation for a period of three years, with "two special conditions of that probation": first, that the fines be paid not later than January 1, 1979, and second, that appellants make reparations to the government for actual damages in excess of $100,000 caused by the offense described in Count I to which they

pleaded guilty, which was to be a joint liability, "and that the amount thereof for which the two of you would jointly be liable would not exceed the sum of one hundred thousand dollars and that that sum of one hundred thousand dollars shall be paid to and deposited not later than January 1, 1979 with the Clerk of this Court . . . ." It was further made clear that the judge "contemplated the regular processes of the Customs Service" for determining the sums due either by "acquiescence" by defendants or by judicial or quasi-judicial determination, that should the amount of damages ultimately assessed be less than $200,000, the difference would be refunded to appellants,[2] and that if the damages were still not determined by January 1, 1981, the $100,000 would be returned to appellants.

Sometime following imposition of sentence, the United States Customs Service assessed damages and penalties in excess of $2,500,000 against appellants. On December 4, 1978, appellants moved under Fed.R. Crim.P. 35 to correct the sentences or in the alternative to reduce the amount of restitution required. Argument on the motion was adjourned pending settlement discussions with the government. The judge met with counsel on December 18, and on December 19 filed amended judgments of conviction and probation orders requiring the fines and restitution to be paid by January 19, 1979, rather than by January 1. On January 15, appellants moved to vacate the guilty pleas under Fed.R.Crim.P. 32(d), and requested the court to allow appellants to plead not guilty. The judge heard argument on the motions that day, and on February 22 denied them in a memorandum opinion.

On this appeal, appellants launch a multifaceted, and somewhat inconsistent, attack on the guilty pleas and sentences. They argue that the district court was without power to impose the restitutionary condition on a plea of guilty for conspiracy and thus the condition is totally invalid; that, if the condition is not totally invalid, it acts as an outer limit on appellants' liability for damages and penalties in the pending customs proceedings; and that, if it does not have that effect, appellants are entitled to withdraw their guilty pleas because they understood that the condition, in whatever amount, would limit the government's civil claim for damages and penalties.

## II

■ We first address appellants' arguments regarding the district court's power to impose the restitutionary condition on probation. 18 U.S.C. § 3651, which governs suspension of sentence and probation, provides generally that probation may be "for such period and upon such terms and conditions as the court deems best." In addition, a restitutionary condition is specifically contemplated as follows:

While on probation and among the conditions thereof, the defendant—

.    .    .    .    .

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had

.    .    .    .    .

The well-settled construction of this language is that restitution may be ordered as a condition of probation only for actual damages flowing from the specific crime charged in the indictment of which the defendant is convicted either after a trial or a plea of guilty. See, e.g., *United States v. Boswell,* 565 F.2d 1338 (5th Cir.), cert. denied, 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110 (1978); *United States v. Buechler,* 557 F.2d 1002, 1007–08 (3d Cir. 1977); *United States v. Follette,* 32 F.Supp. 953, 955–56 (E.D.Pa.1940) (Maris, C.J.). Appellants argue that since conspiracy is an inchoate crime, the essence of which is agreement to commit a crime at some future time, citing, e.g., *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), the

---

**2.** Appellants are only liable for actual damages that exceed $100,000, the amount Takashima paid in settlement with the government.

conspiracy count to which they pleaded caused the government no actual damages.

Neither the parties nor we have been able to find any cases squarely addressing the question. In *United States v. Clovis Retail Liquor Dealers Trade Assn.,* 540 F.2d 1389 (10th Cir. 1976), defendants there pleaded nolo contendere to an indictment charging a conspiracy to fix liquor retail prices. Restitution to an alcoholism institute was ordered as a condition of probation. That condition was vacated by the Tenth Circuit Court of Appeals since the institute was not an "aggrieved party" within the meaning of 18 U.S.C. § 3651. The Tenth Circuit did not address the question whether it was proper to order restitution in connection with a conspiracy charge.

■ Treating the question as one of first impression, therefore, we are of the view that appellants' argument that no actual damages flow from the crime of conspiracy is overly technical, at least on these facts. While it is true "that the agreement is the essential evil at which the crime of conspiracy is directed," see *Iannelli v. United States,* supra, 420 U.S. at 777 n. 10, 95 S.Ct. at 1290, n. 10, we believe that restitution may be ordered as a condition of probation for actual damages charged in the indictment to have been caused by the operation of the conspiracy over time. In this case, the conspiracy count to which appellants pleaded guilty charged that the conspiracy continued for six years after the initial agreement causing avoidance of about $523,000 in import duties. It is fallacious to reason that because persons can be found guilty of conspiracy although their objectives are not attained, the conspiracy has not "caused" its contemplated results when they are.

We note in passing that actual damages have not as yet been determined. Yet the district court ordered appellants to pay $100,000 into court with the understanding that if damages are ultimately determined to be less than $200,000, appellants will be entitled to a refund. See note 2, supra. While there is some support for the power to require security for payment in advance of a final determination of actual damages, see *United States v. Taylor,* 305 F.2d 183, 188 (4th Cir.), cert. denied, 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962), generally restitution payments have been ordered only after actual damages have either been finally determined or formally conceded. See, e. g., *United States v. Boswell, supra; United States v. Hoffman,* 415 F.2d 14, 22-23 (7th Cir.), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969). We believe that at least in this case requiring appellants to deposit a sum in court pending a final determination was reasonable, particularly in view of appellants' willingness, emphatically expressed at oral argument, to pay the $100,000 if that would be the end of all liability, civil and otherwise, arising from the instant customs fraud. A different question would be presented had the district court ordered a payment to an "aggrieved party" rather than the explicitly conditional deposit with the court at issue here.

### III

■ We now turn to the question whether the judge should have allowed appellants to withdraw their guilty pleas. Appellants argue that they pleaded guilty with the understanding that any restitution order imposed would not only be a condition of probation but would also act as an upper limit on any damages or penalties that the government could ultimately collect in any kind of proceeding. Appellants argued before Judge Elfvin in seeking clarification that he intended the probation condition to act as such a cap. The judge rejected this contention at the argument of the motion and confirmed his view in his February 22 opinion. Without addressing whether the judge had the power in the sentencing proceeding to limit appellants' obligations to the government for duties avoided and penalties, we think the judge's interpretation of his own words at sentencing are dispositive of this claim. Thus, we affirm that the condition that appellants pay $100,000 into court does not fix an upper limit on their obligations to the government.

Appellants argue that, regardless of Judge Elfvin's intention, they understood that whatever figure they were required to deposit as a condition of probation would be a ceiling on their total obligations and that the guilty pleas were tendered on that basis. They argue, therefore, they are entitled to withdraw their guilty pleas and go to trial. Fed.R.Crim.P. 32(d) provides:

Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Generally, the burden is on the movant to show he is entitled to obtain relief under Rule 32(d). See *United States v. Michaelson,* 552 F.2d 472, 475 (2d Cir. 1977). Where, as here, a movant seeks to withdraw his plea after sentence, the burden is on him to convince the judge "that manifest injustice will be done him if the plea and conviction are not set aside." *United States v. Moore,* 360 F.2d 146, 147 (2d Cir. 1966). Also, it is thought that generally a movant must at least assert his innocence in order to establish "manifest injustice" within the meaning of Rule 32(d). *United States v. Macklin,* 523 F.2d 193, 196 n. 4 (2d Cir. 1975); *D'Allesandro v. United States,* 517 F.2d 429, 436 n. 7 (2d Cir. 1975). Cf. *United States v. Parrino,* 212 F.2d 919, 921 (2d Cir.), cert. denied, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954); *United States v. Shillitani,* 16 F.R.D. 336, 339 (S.D.N.Y.1954) (Weinfeld, J.).

Appellants do not now assert their innocence, and even assuming that this is not a bar to establishing "manifest injustice" under Rule 32(d), we find appellants have failed to sustain their burden. Appellants claim that they were misled by remarks by the district judge to the effect that any amount ordered for restitution would be a ceiling on their liability for all purposes. It is true that the district judge did at times use the word, "ceiling", and did say that the amount of joint liability "would not exceed the sum of one hundred thousand dollars." But we think it would have been unreasonable for anyone, particularly if represented by counsel as competent as appellants', to have believed that these phrases, read in the context of the entire proceeding, referred to anything other than the probationary conditions. We think it was clear from the context that the only "ceiling" effect that the $100,000 figure would have is that were appellants ultimately found liable to the government in an amount exceeding the $100,000 deposited into court, and were they to fail to pay that excess, their probation would not thereby be violated. Under the judge's condition, the $100,000 deposit will be returned to defendants if there has been no acquiescence or determination of the amount of appellants' liability by January 1, 1981. Under appellants' alleged understanding that the deposit would be a cap on their civil liability, they would have no liability at all if they could drag out civil proceedings against them beyond that date. While the sentencing proceedings were not a model of clarity, the judge obviously did not intend to bestow such a bonanza on appellants, and any belief that he did was not a reasonable expectation.

We are thus convinced that appellants failed to carry their burden of persuasion that refusal to allow withdrawal of their guilty pleas would be a manifest injustice. Therefore, there was no abuse of discretion in denying the motion to permit withdrawal. See *United States v. Moore, supra,* 360 F.2d at 147.

We affirm the order of the district court.[3]

---

3. We now vacate the stay on execution of sentence pending appeal entered by the district court on March 14.