**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Howard M. GERING,
Defendant-Appellant.**

**No. 82–3072.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1982.

Decided Sept. 19, 1983.

---

616

Harry J. McCarthy, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Charles K. Wiggins, Edwards & Barbieri, Seattle, Wash., for defendant-appellant.

Appeal from the United States District Court for the Western District of Washington.

Before KILKENNY, KENNEDY, and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

Gering appeals his conviction of twenty-four counts of mail fraud, 18 U.S.C. § 1341, and from the orders for restitution and costs of prosecution. He argues: (1) the mail cover violated his first amendment rights; (2) testimony of three witnesses was erroneously admitted; (3) jury instruction 17 impermissibly shifted the burden of proof; (4) the amount of restitution ordered was impermissible under 18 U.S.C. § 3651; and (5) costs of prosecution cannot be taxed in addition to maximum fines. We affirm Gering's conviction and the order to pay costs of prosecution. We reverse the order for restitution.

## FACTS AND PROCEEDINGS BELOW

Howard M. Gering is an ordained minister and pastor of the Monroe Bethel Assembly in Monroe, Washington. Gering and his wife served as missionaries to the Pentecostal Church in Indonesia from 1952 through 1966. Gering's work in Indonesia included publication and distribution of religious books and pamphlets. The publication of some materials was financed through donations and distributed free of charge. Monroe Bethel Assembly financed the publication of other books and pamphlets which were sold. Gering testified at trial that the receipts from sales of books belonging to Monroe Bethel Assembly were set aside in a reserve fund which contained over $300,000 by the time the Gerings left Indonesia in 1966.

When Gering returned to the United States in 1966, he established a sponsorship program for needy children and missionaries under the name of Evangelica Scripture Mission (ESM) as an arm of the Monroe Bethel Assembly. Gering attracted sponsors and solicited donations through the mail and by advertising in religious magazines. Sponsors sent payments to ESM with the understanding that the payments

were forwarded to a particular child or missionary.

Gering was indicted for mail fraud for the solicitation and diversion to other uses of the money donated to the sponsorship program. The indictment charged a scheme to obtain money by false representations with respect to several aspects of the sponsorship program.

In defense, Gering attempted to establish that all donations to the sponsorship program were in fact distributed dollar for dollar from the reserve fund accumulated and cached in Indonesia before he left. Gering denied intentionally misrepresenting any aspect of the sponsorship program and attempted to establish that he believed in good faith that any representations made were true.

The jury convicted Gering on all 24 counts. The district court sentenced him to prison on Count One and to probation on the remaining 23 counts. Gering was fined the maximum of $1,000 on each of 23 counts and ordered to pay restitution in the amount of $22,757.67 to victims named in the indictment. He was also ordered to pay costs of prosecution in the amount of $21,527.23.

## ISSUES

1. Did the mail cover violate Gering's first amendment religious and associational rights?

2. Did the district court abuse its discretion in admitting certain testimony of Ray Johnson, Constance Hicks or Mrs. Gering?

3. Did jury instruction 17 impermissibly shift the burden of proof as to Gering's defense of good faith?

4. Was the restitution order impermissible because the amount exceeded that attributable to the offenses for which he was convicted?

5. Was the imposition of costs of prosecution in addition to maximum fines erroneous?

## A. MAIL COVER

During its investigation of Gering, the government conducted two mail covers, as authorized by 39 C.F.R. § 233.3(d)(2) (1982). The mail covers provided a record of the information on the outside of all mail received by Gering at his home, the church, and ESM for the applicable periods. *See* 39 C.F.R. § 233.2(c)(1) (1982). From this information, the government learned the identities of many contributors to the sponsorship program, some of whom testified against Gering or were victims named in the indictment.

Gering moved to suppress all information from the mail covers on the ground they violated Postal Service regulations and Gering's first amendment religious exercise and associational rights. The district court denied the first motion to suppress, finding a *de minimus* violation of the regulations in the extension of one mail cover four days past its 30-day limit. On the second motion, the district court found no first amendment violation, stating: "The use of the mail cover in question was a minimally-intrusive interference with defendant's privacy and religious activities. If there was any impingement upon defendant's religious activities, that impingement was warranted."

On appeal Gering argues that the mail cover requests were inadequate under the governing regulations because they failed to provide the Postal Inspector with reason to believe a crime had been committed. Gering also argues that the mail cover abridged his first amendment religious rights and the violation was not outweighed by compelling governmental interests as required under such cases as *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). We reject both arguments.

1. *Mail Cover Requests.*

The postal regulations provide in part:
  The Chief Postal Inspector, or his designee, may order mail covers under the following circumstances:
  *    *    *    *    *    *
  (ii) When written request is received from any law enforcement agency where-

in the requesting authority stipulates and specifies the reasonable grounds that exist which demonstrate the mail cover is necessary to ... (C) obtain information regarding the commission or attempted commission of a crime.

39 C.F.R. § 233.3(d)(2) (1982).

■ Gering argues the requests here failed to meet these requirements because they did not give sufficient facts to show a crime had been committed or attempted. The government argues that this issue was not raised below and there is no plain error. We agree with the government.

The sufficiency of the mail cover requests under the regulations was not briefed by the parties on the motions to suppress nor addressed by the district court. Accordingly, we find the issue was not raised below.[1] The requests here are practically indistinguishable from that approved by us in *United States v. Choate,* 576 F.2d 165, 169 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978) (*Choate II*). There is no plain error. Fed.R.Crim.P. 52(b).

2. *Religious Freedom.*

Gering argues that a mail cover on a minister, a church or its related enterprises is *per se* violative of the first amendment. He argues that the mere potential for abridgement of religious freedom should invalidate the mail cover, and it is irrelevant that the information was used only for permissible law enforcement purposes or that the subject of the mail cover did not know about it.

■ We have found no case, nor have we been directed to one, directly ruling on a mail cover on a minister or church challenged under the free exercise clause of the first amendment. The general principles regarding mail covers, however, persuade us to reject Gering's *per se* rule.[2]

In *United States v. Choate,* 576 F.2d 165 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978) (*Choate II*), *aff'd,* 619 F.2d 21 (9th Cir.), *cert. denied,* 449 U.S. 951, 101 S.Ct. 354, 66 L.Ed.2d 214 (1980), we sustained a mail cover against first, fourth and ninth amendment challenges. While *Choate II* did not directly implicate the free exercise clause, the rationale is instructive. In finding no first amendment rights were violated, we stated:

As seen, the only information being gleaned by the Bureau of Customs was material on the outside of Choate's incoming mail and packages. Such material certainly would not abridge Choate's freedom of speech. Indeed, like any other reasonable citizen, he could expect no privacy as to the outside of his incoming mail, and any "chill" on the exercise of First Amendment rights resulting from that "lack of privacy" is not significant enough to be constitutionally impermissible when, as here, the challenged activity [a mail cover] does not concern the substance of a communication and fits within regulatory restrictions.

*Choate II,* 576 F.2d at 181.

We also found the mail cover substantially less intrusive than other law enforcement

---

**1.** Gering asserts the sufficiency of the mail cover requests was raised below in its argument that the government failed to show compelling interests to outweigh violation of first amendment rights. Even if that were so, since we find no first amendment violation, we need not address the governmental interests. *Cf. Scott v. Rosenberg,* 702 F.2d 1263, 1273 (9th Cir. 1983).

**2.** Gering relies primarily on *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Surinach v. Pesquera de Busquets,* 604 F.2d 73 (1st Cir.1979); *Bursey v. United States,* 466 F.2d 1059 (9th Cir.1972). These cases are not dispositive. Each deals with a form of governmentally com-

pelled disclosure of information. *See Buckley,* 424 U.S. at 6, 96 S.Ct. at 628 (disclosure requirements of Federal Election Campaign Act of 1971 and related provisions of the Internal Revenue Code); *Alabama,* 357 U.S. at 451, 78 S.Ct. at 1166; (court order to NAACP to produce membership list); *Surinach,* 604 F.2d at 75–76 (Department of Consumer Affairs' investigative powers and disclosure order to Catholic school); *Bursey,* 466 F.2d at 1065 (grand jury questions of staff members of *The Black Panther* newspaper). Gleaning information from the outside of envelopes, in the circumstances of this case, does not rise to the level of governmentally compelled disclosure within the meaning of the cited cases.

practices upheld by the Supreme Court. 576 F.2d at 182. Finally, we noted that the record showed the information gleaned from the mail cover was used only for legitimate government law enforcement purposes and would not allow the government to "build up such a complete picture of the subject that it could be used to invade such intimately personal rights as protected by *Griswold v. Connecticut* [379 U.S. 926, 85 S.Ct. 328, 13 L.Ed.2d 339] . . . ." *Id.* 183.

The principles from *Choate II* require a showing that a mail cover had some particular detrimental effect on religious exercise and association or was used for impermissible purposes. *Id.* The mere potential for abridgement of first amendment rights in a mail cover on a minister or a church is insufficient to show a first amendment violation. *Cf. Scott v. Rosenberg,* 702 F.2d 1263, 1271 (9th Cir.1983) (merely conclusory allegations insufficient).

We hold that this mail cover, as authorized by the regulations and otherwise permissible under the fourth amendment, *see Choate II,* 576 F.2d at 174–75, did not violate Gering's first amendment rights *per se.* Since Gering has failed to show that the mail covers were improperly used and burdened his free exercise or associational rights, we find no first amendment violation. *See Scott,* 702 F.2d at 1272–73; *Choate II,* 576 F.2d at 183; *Reporter's Committee for Freedom of the Press v. American Telephone & Telegraph Co.,* 593 F.2d 1030, 1056–57 (D.C.Cir.1978), *cert. denied,* 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979) (government access to reporter's toll-call records analogous to mail covers under first amendment free press and fourth amendment challenges).

The district court did not err in denying the motion to suppress evidence obtained from the mail covers.[3]

**3.** Gering argues that the mail cover violated the religious and associational rights of the members of his church. In *Choate II,* 576 F.2d at 181, we suggested that there is no third party standing absent a showing of equivalency of interest. Here, as in *Choate II,* there is no equivalency of interest between Gering and the

### B. ADMISSION OF TESTIMONY

The district court's admission of evidence under Fed.R.Evid. 403 will be reversed only if it was an abuse of discretion. *United States v. Tom,* 640 F.2d 1037, 1039 (9th Cir.1981). Gering argues that the district court abused its discretion in admitting the testimony of Ray Johnson, Mrs. Gering, and Constance Hicks.

### 1. *Johnson's Testimony.*

To establish his defense, Gering testified that the profit from the sale of books and pamphlets in Indonesia during the years 1952 to 1965 was the property of Monroe Bethel Assembly. He testified that the money had been placed in strong boxes and buried near the Bible college he had established before he left Indonesia in 1966. Gering attempted to persuade the jury that this reserve fund was used for the orphan sponsorship program he later established in the United States. He attempted to establish that, upon receipt of a sponsorship contribution, he would write a letter to Mr. M. Simatupang in Indonesia, authorizing the disbursement from the reserve fund of an amount equal to the contributions that had been received in the United States. Mr. Simatupang could not be found to testify.

To rebut the reserve fund defense, the government called Ray Johnson who testified that his group, Life Messengers, had paid $300,000 to Mr. Gering to publish religious literature and distribute it free in Indonesia. Johnson testified that he visited Indonesia and discovered many booklets which had not been distributed and that he could find little or no evidence that the money contributed had been used to print pamphlets according to his agreement with Gering. Johnson also testified that when Gering wrote to him soliciting contributions for publication of literature, Gering por-

victims of his fraud. Nor does the record indicate that any senders of mail objected to the mail cover interference with their associational rights. *See Singleton v. Wulff,* 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826 (1976).

trayed an extreme shortage of funds for the publication and distribution of literature.

Gering objected to portions of the Johnson testimony as hearsay and to other portions as irrelevant. The district court sustained the hearsay objections, struck the hearsay statements and advised the jury to disregard them. The court overruled the relevance objection on the ground that Johnson's testimony was relevant to Gering's credibility and to the existence or uses of the reserve book fund.

Gering argues that the district court's limiting instruction was an inadequate repair to the admission of hearsay. He also argues that the Johnson testimony was in fact evidence of prior acts which should have been excluded under Fed.R.Evid. 404(b). Finally, Gering argues that he had no notice that Johnson would testify and was unable to rebut the testimony. We reject each argument.

Johnson's testimony included many facts of which he had personal knowledge. The objectionable hearsay was stricken and the district court's limiting instruction was an adequate direction to the jury to disregard the hearsay. See United States v. McDonald, 576 F.2d 1350, 1356 n. 8 (9th Cir.), cert. denied, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1978); United States v. Kennedy, 564 F.2d 1329, 1334 (9th Cir.1977), cert. denied, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

■ Gering's argument that Johnson's testimony should have been excluded under Fed.R.Evid. 404(b) also fails. The government did not argue that the testimony was admissible for Rule 404(b) purposes and the trial court admitted the substance of Johnson's testimony as directly relevant to Gering's credibility and his defense. Once Gering took the stand and created the reserve fund defense, the existence, ownership and use of the purported fund became a fact in issue. The Johnson testimony was relevant because it served to rebut Gering's defense. See United States v. Park, 421 U.S. 658, 677–78, 95 S.Ct. 1903, 1909–10, 44 L.Ed.2d 489 (1975).

■ Gering's communications with Johnson that money was desperately needed to print and distribute literature tended to rebut Gering's assertions that a large surplus from the sale of literature existed. Also, Mr. Johnson's testimony regarding his personal observations of the Indonesian publishing operation were undoubtedly relevant to Gering's credibility. The record shows the district court carefully considered the relevance of Johnson's testimony and balanced its prejudicial effect with probative value. The district court did not abuse its discretion in admitting the Johnson testimony under Rule 403.

■ We also reject Gering's argument that he was surprised by Johnson's testimony and did not have opportunity to rebut it. Johnson was a rebuttal witness. The government is not ordinarily required to disclose such witnesses. United States v. Angelini, 607 F.2d 1305, 1308–09 (9th Cir. 1979).

2. Cross-Examination of Mrs. Gering.

■ Gering objected to the government's cross-examination of Mrs. Gering regarding Gering's entry into China under a Swiss passport. The objection was to a few sentences of testimony in a trial that lasted four weeks and spans nearly 3,000 pages of testimony. Even if the testimony should have been excluded, any error in admitting it was harmless. United States v. Abraham, 617 F.2d 187, 190–91 (9th Cir.), cert. denied, 447 U.S. 929, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980).

3. Hicks' Testimony.

■ Constance Hicks testified that she had received from Gering a $5,000 cashier's check drawn on the ESM account and that the money had nothing to do with the mission program or church activity. An integral part of the scheme alleged was misuse of the ESM funds. There was no error in admitting Hicks' testimony as relevant. United States v. Calhoun, 604 F.2d 1216, 1217–18 (9th Cir.1979).

### C. JURY INSTRUCTIONS

Gering requested the following instruction on the good faith defense to mail fraud:

Good faith on the part of a defendant in the plan which the government in this case has alleged to have been fraudulent, and a good faith intention to carry out the promises and representations made, constitute a defense to the crimes charged. If the evidence in the case leaves the jury with a reasonable doubt whether the defendant entertained such good faith, then the jury must find the defendant not guilty.

The district court gave the following instruction:

To be convicted of the charge in any count, the defendant must have entered into the alleged scheme with the intent to defraud or to obtain money or property through false representations. If you find that a defendant in good faith believed that the representations which were being made by himself were true, the necessary intent did not exist and the defendant must be acquitted on all counts.

Gering argues that the court's instruction impermissibly shifts to him the burden of proving good faith, *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We disagree.

While a trial court must instruct on the defendant's theory of the case, the instruction need not be in the precise language requested by defendant. *United States v. Seymour*, 576 F.2d 1345, 1348 (9th Cir.), *cert. denied*, 439 U.S. 857, 99 S.Ct. 171, 58 L.Ed.2d 164 (1978). Refusal to give a requested instruction is not error "if the charge as a whole adequately covers the theory of the defense." *United States v. Kaplan*, 554 F.2d 958, 968 (9th Cir.) *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977). The adequacy of the jury instructions is not to be determined by the giving, or failure to give, any one or more instruction, but by examining the instructions as a whole. *Id. Accord, Seymour*, 576 F.2d at 1348.

In *Seymour*, we approved an instruction on the good faith defense that is substantially similar to the one proposed by Gering in the part relevant to the burden of proof. 576 F.2d at 1347–48. We did not decide, however, whether the language in *Seymour* was required as an accurate statement of the burden and quantum of proof. While the *Seymour* language is preferable, it is no more explicit than the one given by the court here with respect to the burden and quantum of proof.

Just before the good faith instruction, the court instructed the jury on specific intent, stating that the government has the burden of proof. The instruction requires the jury to acquit if the evidence leaves a reasonable doubt as to the defendant's specific intent. The instructions defined "intent to defraud" and "willfully." The court also twice instructed the jury that the burden of proof never shifts from the government throughout the trial and that the law does not require a defendant to prove his innocence or produce any evidence. Several times the instructions emphasized the government's burden of proof with respect to every element of the crime. *See Seymour*, 576 F.2d at 1348. We conclude that the instructions taken as a whole adequately set out in substance the burden and quantum of proof with respect to the good faith defense. *See United States v. Tom*, 640 F.2d 1037, 1041–42 (9th Cir.1981). *Cf. United States v. Dearmore*, 672 F.2d 738, 740–41 (9th Cir.1982) (entrapment instruction inadequate).[4]

### D. RESTITUTION

The district court ordered restitution of the total amount of contributions to the

---

**4.** The government argues that the court's instruction on the good faith defense should be reviewed only for plain error since Gering failed to object properly at trial. The record shows there may have been no meaningful opportunity to object to the instruction before the jury retired. *See* Fed.R.Crim.P. 30.

sponsorship program by all persons named in the indictment during the indictment period.[5] Only one mailing per victim for each count was alleged in the indictment, however, for a total alleged loss of $739.00.

The authority for requiring restitution as a condition of probation is contained in 18 U.S.C. § 3651 (1976):

> While on probation and among the conditions thereof, the defendant . . . [m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had. . . .

Gering argues that restitution is limited by this section to the amount alleged in the indictment because that is the loss "caused by the offense for which conviction was had." Gering reasons that each mailing is a separate offense, e.g., United States v. Calvert, 523 F.2d 895, 914 (8th Cir.1975), cert. denied, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976), and thus restitution is limited to amounts in the indictment counts. Gering relies on this court's decision in Karrell v. United States, 181 F.2d 981 (9th Cir.1950), as recently applied in United States v. Orr, 691 F.2d 431 (9th Cir.1982). We agree with Gering that the principles of Karrell and Orr control this issue.

In Orr, 691 F.2d at 432, the defendant was charged originally with nine counts of embezzlement for a total of $3,715.00 but later pleaded guilty to a superseding indictment charging two misdemeanor counts of embezzlement of $100.00. All other charges were dismissed. There was no provision in the plea agreement for restitution as a condition of probation. Id. Orr challenged the imposition of restitution of an amount greater than that for which she was convicted. We held: "[A]bsent a fully bargained plea agreement or modification thereof for restitution in an amount greater

than the conviction as a condition of probation, the sentencing court is limited by section 3651 to imposing restitution of amounts charged in counts for which conviction was had." Id. at 433–34 (footnote omitted).

Our decision in Orr was based on this court's construction of section 3651 in Karrell v. United States, 181 F.2d 981, 987 (9th Cir.1950) limiting restitution to amounts for which the defendant was actually convicted. We noted that the Karrell construction of section 3651 is the majority rule, and explained the narrow exception developed by the courts, which was applied by us in Phillips v. United States, 679 F.2d 192 (9th Cir.1982), where a defendant has entered a plea agreement for restitution of amounts greater than the conviction. Orr, 691 F.2d at 433.

Nevertheless, the government argues that the reasoning in Phillips permits an order of restitution for the entire amount obtained through a mail fraud scheme. We reject this argument.

In Phillips, the defendant pleaded guilty to three counts of a 26-count indictment alleging mail fraud but none of the counts specified an amount of loss. 679 F.2d at 193. Phillips had agreed to restitution of a specific amount as a condition of probation. The precise issue in Phillips was whether the amount of restitution could be determined by plea negotiations despite the fact that none of the counts to which Phillips pleaded guilty stated a specific amount of monetary loss. We found the order consistent with Karrell because Phillips was not required to make restitution of an amount set forth in dismissed counts. Id. We were persuaded by the reasoning of the district court in United States v. McLaughlin, 512 F.Supp. 907, 908 (D.Md.1981), based on the policies of restitution and plea bargaining.

---

**5.** The government submitted a determination of restitution in the amount of $24,853.67. No reason appears in the restitution order for the difference in the amount ordered from that suggested by the government. The determination of the amount of requested restitution was made by a United States Postal Inspector. According to his affidavit, the estimate was prepared from the records of the ESM during the indictment period relative to each of the sponsors named in the indictment.

Finally, we discussed the district court's reasoning based on *United States v. Tiler,* 602 F.2d 30 (2d Cir.1979): [6]

The offense of mail fraud requires both an act of using the mails and a fraudulent scheme. The district court stated that such a scheme is similar to the ongoing offense of conspiracy in *Tiler.* The *Tiler* court relied on the nature of the conspiracy offense to set restitution at a figure which encompassed all damages from the conspiracy despite the fact that defendants were not convicted of specific fraudulent acts. The district court adopted this reasoning and analogized that "in mail fraud cases, 'offense' includes the fraudulent scheme alleged as an element of the offense and restitution may be ordered in an amount caused by the entire scheme rather than only in the amount caused by a particular mailing."

*Phillips,* 679 F.2d at 196 (citation omitted). We then approved the analogy to *Tiler* where the defendant has entered a plea agreement for restitution as a condition of probation. 679 F.2d at 196. The *Phillips* reasoning, however, cannot be extended beyond the plea agreement context.[7]

We recognize that an element of mail fraud is the scheme to defraud. *E.g., United States v. Bohonus,* 628 F.2d 1167, 1171 (9th Cir.) *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). It has also been held, however, that each count in mail fraud is a separate offense although in furtherance of a single scheme and maximum punishment may be imposed for each mailing. *United States v. Calvert,* 523 F.2d 895, 914 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). We see no reason to expand the definition

---

**6.** In *Tiler,* appellants argued that since conspiracy is an inchoate crime, the essence of which is agreement to commit a crime at some future time, the conspiracy count caused the government no actual damage. 602 F.2d at 33–34. Thus, the precise issue was whether it was proper to order restitution at all in connection with a conspiracy charge. In finding restitution could be ordered for conspiracy conviction the Second Circuit focused on the nature of the offense. The court stated:

[W]e are of the view that appellants' argument that no actual damages flow from the crime of conspiracy is overly technical, at least on these facts. While it is true "that the agreement is the essential evil at which the crime of conspiracy is directed," . . . we believe that restitution may be ordered as a condition for probation for actual damages *charged in the indictment* to have been caused by the operation of the conspiracy over time. . . .

*Tiler,* 602 F.2d at 34 (citation omitted) (emphasis added).

The conspiracy count in *Tiler* alleged a specific amount of loss, and the court limited its holding to actual damages charged in the indictment. This and other aspects of *Tiler,* including the plea agreement, entirely distinguish it from this case although its reasoning was approved in *Phillips.*

**7.** We also distinguish two other cases in this circuit. In *United States v. Hix,* 545 F.2d 1247 (9th Cir.1976) (per curiam), we decided that restitution was a permissible condition of probation under section 5010 of the Federal Youth Corrections Act, 18 U.S.C. § 5010(a). We stat-

ed that the YCA provides a sentencing alternative for "treatment rather than punishment under the applicable penalty provisions provided by law." 545 F.2d at 1247. In finding that restitution was consistent with the YCA we stated: "So long as repayment is made to the victim and does not exceed the damage caused by the offense, restitution is essentially rehabilitative, and hence consistent with the purpose of the Youth Corrections Act." When viewed in the context of the precise issue presented by the case it is clear the statement does not refer to the permissible amount of restitution.

*Higdon v. United States,* 627 F.2d 893 (9th Cir.1980) deals with the more general question of whether restitution as a condition of probation is appropriate in a particular case. As the *Higdon* opinion notes, that question is governed by the test set forth in *United States v. Consuelo-Gonzalez,* 521 F.2d 259, 263–64 (9th Cir.1975) (en banc). Conditions of probation must be reasonably related to rehabilitation of the offender and protection of the public. *Id.* Under that test, restitution as a condition of probation might be inappropriate in certain cases. We found in *Higdon* that the cumulative effect of the forfeiture and charitable work conditions had an impact substantially greater than necessary to carry out the purposes of rehabilitation. 627 F.2d at 900. We noted that *forfeiture of assets may be equivalent to restitution and that restitution is rehabilitative as long as payment is to the victim and does not exceed the amount of the victim's loss. Id.* at 899 n. 14. We cited *Hicks,* assuming without deciding that the amount of restitution ordered was proper. Thus, the statements in *Higdon* are also consistent with our holding today.

of "offense" beyond that circumscribed in the indictment counts for the purposes of restitution under section 3651. *See Orr,* 691 F.2d at 433–34.

Finally, we are persuaded by the reasoning in cases dealing with the "actual damages" requirement of section 3651. *E.g., United States v. Roberts,* 619 F.2d 1 (7th Cir.1979); *United States v. Boswell,* 565 F.2d 1338 (5th Cir.1978), *cert. denied,* 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110 (1979); *United States v. Hoffman,* 415 F.2d 14 (7th Cir.1969), *cert. denied,* 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1970); *United States v. Taylor,* 305 F.2d 183 (4th Cir.), *cert. denied,* 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962). The requirement is grounded on the need for proving with certainty the amount of the loss caused by the offense. The implication of these cases is that the amount of loss must be established by proof at trial, *United States v. Stoehr,* 196 F.2d 276 (3d Cir.1952); *Roberts,* 619 F.2d at 2, some other judicial determination, *see Boswell,* 565 F.2d at 1342–43; *Taylor,* 305 F.2d at 187, or some consensual means, *Phillips,* 679 F.2d at 194; *United States v. Landay,* 513 F.2d 306 (5th Cir.1975).

■ Here, Gering was convicted on a 24-count indictment alleging specific mailings and loss in the amount of $739.00. A greater amount was determined by a non-judicial method, *see supra* note 4; *cf. Boswell,* 565 F.2d at 1342 (determination by probation officer); *Hoffman,* 415 F.2d 21–22 (determination by State Director of Insurance). Since no plea agreement appears for this amount of restitution, the district court erred in ordering restitution of amounts beyond those contained in the indictment.[8] The order for restitution is reversed and the case is remanded for resentencing.[9]

### E.  COSTS OF PROSECUTION

Gering argues that the district court erred in taxing him $21,527.23 as costs of prosecution under 28 U.S.C. § 1918(b) (1976). That section provides: "Whenever any conviction for any offense not capital is obtained in a district court, the court may order that the defendant pay the costs of prosecution."

In *United States v. Ducharme,* 505 F.2d 691, 692 (9th Cir.1974) (per curiam), the defendant was convicted under 26 U.S.C. § 7205 for supplying false information on employee withholding exemption certificates. 505 F.2d at 692. We reversed the taxation of costs in addition to the maximum fine. We found that section 7205 did not authorize assessment of costs as other sections of Title 26 do. *Id.* In *Ducharme,* however, we did not construe 28 U.S.C. § 1918(b), the general cost statute for criminal cases, as we are required to do in this case. Thus, *Ducharme* does not control.

In *United States v. Taxe,* 540 F.2d 961, 970 (9th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977), the defendant was convicted of both mail fraud and copyright infringement, and costs of prosecution were taxed for both types of offenses. The copyright statutes, however, specifically prohibited taxing costs in proceedings brought by or against the United States. *Id.* at 970; 17 U.S.C. § 116. Because the costs attributable to the mail fraud counts could not be separated from those for the copyright counts, we vacated the cost order and remanded to the district court. We also noted:

Section 1341 [mail fraud] does not authorize the assessment of costs in addition to a fine as do some other criminal statutes. If the assessment of the costs of prosecution here, as it was in *United States v. Ducharme,* 505 F.2d 691 (9th Cir.1974), is "tantamount to increasing that [maxi-

---

**8.** The government seems to concede that no restitution could be ordered on count one for which incarceration was imposed. We note, however, our ruling in *Orr,* 691 F.2d at 434, for the district court's consideration.

**9.** We note that the victims still have a civil remedy for any other losses that may be proved. We also note the Victim and Witness

Protection Act of 1982, Pub.L. No. 97–291, 96 Stat. 1248 (1982), *reprinted in* 18 U.S.C.A. §§ 3579, 3580 (Supp.1982), is effective with respect to offenses occurring after January 1, 1983. It contains new provisions for restitution, but we express no opinion as to its effect in future cases.

mum] fine" (*id.* at 692), the imposition of costs exceeded the maximum fine authorized by Congress for the offense. The *Ducharme* question can be resolved on remand.

*Taxe,* 540 F.2d at 970.

Thus, without referring to section 1918(b), it appears *Taxe* extends the *Ducharme* rationale to mail fraud cases and perhaps any prosecution under a substantive criminal statute that does not specifically authorize taxation of costs of prosecution. Decisions from other circuits persuade us that the dictum in *Taxe* was unwarranted.

■ Other circuits have generally upheld imposing costs of prosecution under 28 U.S.C. § 1918(b) on defendants convicted under a variety of substantive criminal statutes, none of which specifically authorize costs of prosecution. *United States v. Burchinal,* 657 F.2d 985, 997–98 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *United States v. DeBrouse,* 652 F.2d 383, 391 (4th Cir.1981); *United States v. Dorr,* 636 F.2d 117, 121 (5th Cir.1981); *United States v. Glover,* 588 F.2d 876, 878 (2d Cir.1978); *United States v. Pommerening,* 500 F.2d 92, 101–02 (10th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974); *United States v. Lee,* 107 F.2d 522, 527–28 (7th Cir.1939) (costs under the predecessor to section 1918(b), 28 U.S.C. § 822). *Accord United States v. Bodine Produce Co.,* 206 F.Supp. 201, 211 (D.Ariz.1962). These cases establish a general rule that a district court has discretion to award costs and determine the appropriate amount, *Pommerening,* 500 F.2d at 102, as long as the items of cost are authorized by the statutes and are imposed only on non-indigent defendants in a nondiscriminatory manner. *See United States v. American Theater Corp.,* 526 F.2d 48, 50 (8th Cir.1975), *cert. denied,* 430 U.S. 938, 97 S.Ct. 1569, 51 L.Ed.2d 786 (1977); *Pommerening,* 500 F.2d at 101–02. *See also United States v. Chavez,* 627 F.2d 953, 957 (9th Cir.1980), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1376, 67 L.Ed.2d 353 (1981) (upholding mandatory assessment of costs of prosecution under 26 U.S.C. § 7203 against constitutional challenges).

In *Burchinal,* the Eighth Circuit distinguished *Ducharme* as limited to costs in prosecution for Title 26 tax offenses. 657 F.2d at 998. The court stated:

> The language of 28 U.S.C. § 1918 is very general, and in our opinion it applies to all criminal prosecutions other than capital cases. If Congress had intended that the costs of prosecution could be assessed under § 1918 only where the statute under which the defendant is convicted specifically provides for such an assessment, § 1918 would be redundant and meaningless. We cannot accord such an interpretation to the statute.

*Burchinal,* 657 F.2d at 998.

We are persuaded by this reasoning. We hold that, unless the statute under which a defendant is convicted provides otherwise, a district court may in its discretion impose costs of prosecution under section 1918(b) on non-indigent defendants.

■ Here, all cost items assessed are allowed under 28 U.S.C. §§ 1821 and 1920. The district court did not find Gering indigent. There was *no finding of discrimination. See Dorr,* 636 F.2d at 121. The district court did not err or abuse its discretion in taxing costs against Gering.

Gering's conviction is AFFIRMED. The restitution order is REVERSED and REMANDED for redetermination consistent with this opinion. The order to pay costs of prosecution is AFFIRMED.