UNITED STATES of America,
Plaintiff-Appellee,

v.

Alvin BARON, Defendant-Appellant.

No. 78–2222.

United States Court of Appeals,
Seventh Circuit.

Heard June 13, 1979.

Decided Aug. 9, 1979.

Rehearing and Rehearing En Banc
Denied Sept. 18, 1979.

Raymond J. Smith, Gerald M. Werksmen, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., David Stetler, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and CUMMINGS, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUMMINGS, Circuit Judge.

The defendant was the asset manager of the Teamsters' Central States Pension Fund. On June 30, 1978, he was convicted after a jury trial of one count of solicitation of a bribe to influence an employee benefit plan (18 U.S.C. § 1954), five counts of a scheme to defraud by wire (18 U.S.C. § 1343) and one count of filing a false income tax return (26 U.S.C. § 7206(1)). The charges arose out of a $200,000 fee defendant solicited from Foy Bryant in regard to a 1.3 million dollar loan the Pension Fund extended to a corporation owned by Bryant. Defendant argues on appeal that his conviction should be reversed because: (1) the trial judge prejudiced the defendant by the manner in which he conducted the trial, (2) certain memoranda were erroneously admitted into evidence and (3) the judge failed to give an instruction he had told defense counsel he would give and upon the expectation of which counsel relied in his closing argument. We affirm.

*The Trial Court's Questions and Comments Did Not Prejudice The Defendant.*

At both the beginning and the end of the trial Judge Will told the jurors that his questions to witnesses were "not to help one side or the other," that his questions should not be given more weight than questions asked by counsel, and that the jurors alone were to judge the evidence (Tr. 12, 3172, 3181, 3186–3187, 3205). The transcript reveals that the judge questioned witnesses for both sides and made evidentiary rulings that were adverse to both sides.

■ As defendant concedes, "[t]here is no question that the trial judge may take an active part in the examination of witnesses during a jury trial" (Br. 28). *United States v. DiVarco,* 484 F.2d 670 (7th Cir. 1973); *United States v. Siegel,* 587 F.2d 721 (5th Cir. 1979); *United States v. Esquer,* 459 F.2d 431 (7th Cir. 1972). However, a trial judge may not conduct such questioning in a way that is likely to communicate to the jury the judge's belief in the defendant's guilt. *United States v. Dellinger,* 472 F.2d 340 (7th Cir. 1972); *United States v. Tobin,* 426 F.2d 1279 (7th Cir. 1970); *United States v. Hill,* 332 F.2d 105 (7th Cir. 1964).

* Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

The defendant has set out sixteen specific instances of rulings, comments or questions by the court which he claims prejudiced his case. We have examined these examples in context as well as other comments by the trial court, and we conclude that the complained-of incidents were not designed to and did not in fact prejudice the defendant. The *Dellinger, Tobin* and *Hill* cases, all *supra,* are distinguishable because they all involved far more intrusive and prejudicial questioning. Moreover, in each of those cases the judge interrogated the defendant himself, whereas here the objection is to questions posed to various witnesses which the defendant claims undercut his theory of the case.

Defendant's theory was that his accuser, Foy Bryant, had embezzled the $200,000 from trust funds held by his corporation and had concocted the story of bribing the defendant for the two-fold purpose of exculpating himself and attempting to blackmail the Pension Fund into making additional loans to him and not revealing his defalcation. Telephone and travel records established that defendant and Bryant had been in contact at the times Bryant said the demands for money were made and that the two men were in the same cities on the dates Bryant said he delivered the money to defendant. The defense contended that the telephone calls involved legitimate business regarding the loan and that Bryant followed the defendant to Burlingame, California, and to Las Vegas in order to establish potential access as part of the frame-up scheme. In their attempt to discredit Bryant, defense counsel emphasized inconsistencies in various versions of the story Bryant had given. Some of these inconsistencies were very minor indeed, the defense theory being that cumulatively they would establish a pattern of adjusting the story to fit the documentation. We are convinced that defense counsel were allowed to develop their theory fully despite the rulings they object to. The district court properly exercised its discretion to avoid an excessively long trial and confusion of the jury.

### Bryant's Memoranda Were Properly Admitted Into Evidence.

Defendant's second argument on appeal is that it was reversible error to admit into evidence memoranda written by Bryant shortly after each payment to defendant was planned or made. The memoranda describe essentially the same course of events that Bryant testified to at trial. In a defense counsel's opening argument he told the jurors that he would seek to establish that Bryant had framed defendant to protect himself. On direct examination of Bryant, the Government elicited the fact that he had made memoranda of the course of the bribery soon after each of the important events. The reason Bryant gave for making the memoranda was that his accountant had advised him to document the payments so that he would not have to pay income tax on the $200,000 that had been withdrawn from the corporate account and was otherwise unaccounted for (Tr. 474–475). The contents of the memoranda were not brought out on direct examination. After Bryant's direct testimony the Government sought to introduce the memoranda. The trial court declined to admit them at that point, commenting

> "I suspect at some point they will go in. I think it is inappropriate at this point to admit them because they are no more than a memorialization of what he testified to from his recollection, and they don't really add anything to his testimony, unless his testimony is challenged, which so far it has not been." (Tr. 525–526.)

On cross-examination of Bryant, a defense counsel referred repeatedly to the memoranda. He first elicited the fact that Bryant never furnished the memoranda to the Pension Fund, did not bring the memoranda with him to the meeting at the Pension Fund at which he revealed the payments to defendant, did not tell the Pension Fund of the payments to defendant until a fund employee accused him of stealing the money himself, and paused before revealing to the Fund that it was defendant to whom he had paid the money (Tr. 540–544). Later in the cross-examination counsel brought out discrepancies between the memoranda

and Bryant's trial testimony.[1] In the course of this cross-examination, portions of the memoranda that were assertedly inconsistent with Bryant's direct testimony were read to the witness. Occasionally there ensued extended and confusing colloquies about what the memoranda actually said and whether they were inconsistent with the witness' testimony (Tr. 647–650, 671–675, 703–704, 747–753). On redirect examination, the Government sought to have Bryant read the memoranda to the jury, but the court rejected this suggestion, commenting

> "if they can be reproduced and circulated to the jury·after they have been received, assuming they are received that is fine, but we are not all going to sit here while Mr. Bryant goes on for an hour reading pages of memoranda * * *" (Tr. 824).

Subsequently, the court admitted the memoranda over defendant's objection and allowed copies of them to be before the jury while it was deliberating. In admitting the memoranda, the trial judge relied on Rule 801(d)(1)(B) of the Federal Rules of Evidence.[2] He first noted that Bryant had testified that his purpose in making the memoranda was to create documentation for tax purposes.[3] The judge then commented:

> "Now, certainly, what you have suggested in your opening argument, is that this story of Mr. Bryant's today is a fabrication and is inaccurate, and that it is false, and here is a statement which is consistent with his testimony in part, and inconsistent in part.

"It was used extensively in cross examination to show inconsistencies. I don't think you can have it one way only, and that is that you can use the statement, which was a contemporaneous statement at the time, to show that his recollection then was different in some respects from what his recollection is now, but the Government cannot put the statement in to show that his recollection then was consistent in other respects with what his testimony was now, what his recollection is now.

"It seems to me that what you are trying to do is have your cake and eat it too. That is, use the statement solely to show that on the earlier occasion he had some differences in his recollection, as distinguished from what his testimony was, but that it is not permissible for the Government to show that at the same time his recollection at the earlier date was consistent with his testimony here." (Tr. 979–980.)

Defendant argues that admitting this evidence was erroneous for two reasons: (1) for Rule 801(d)(1)(B) to apply, the witness must have been impeached by a prior inconsistent statement, and (2) the memoranda are irrelevant and self-serving because the defendant had the same motive to falsify at the time he created them as he did when he testified.

■ We cannot agree that the only situation in which Rule 801(d)(1)(B) would apply is when a witness has been impeached by a prior inconsistent statement. Judge Weinstein in his treatise on evidence dis-

---

**1.** These discrepancies involved dates on which phone calls had been made, dates on which certain matters were discussed, and whether Bryant's son accompanied him when he made one payment or waited in the hotel lobby.

**2.** Rule 801(d)(1)(B) provides:
> "(d) *Statements which are not hearsay.* A statement is not hearsay if—
> "(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (B) consistent with his testimony and is offered to rebut an express or implied charge against

him of recent fabrication or improper influence or motive * * *."

**3.** As the court indicated, if Bryant made the payments to defendant, creating a record for tax purposes would be a proper motive for the memoranda. If, on the other hand, Bryant appropriated the money himself, writing the memoranda could have been not only for the purposes of framing defendant and blackmailing the Fund (as defendant suggested) but also to avoid tax fraud charges—all of which are clearly improper purposes.

cussed Rule 801(d)(1)(B) in that context,[4] and clearly that is one situation in which the Rule would be useful. However, neither the language of the Rule itself nor the cases so limit the Rule. *United States v. Rinn,* 586 F.2d 113, 119 (9th Cir. 1978); *United States v. Williams,* 573 F.2d 284, 289 (5th Cir. 1978); *United States v. Lanier,* 578 F.2d 1246, 1253–1254 (8th Cir. 1978). Rule 801(d)(1)(B) applies when the credibility of the witness has been attacked by a charge of recent fabrication or improper motive, regardless of whether the credibility of the witness is assaulted through his own prior inconsistent statements or by some other means. In addition, here defense counsel really were trying to impeach Bryant through his own prior and assertedly inconsistent statements in the memoranda. The issue then became the extent to which the prior statements in the memoranda were inconsistent with Bryant's testimony. Although on cross-examination certain discrepancies were emphasized, it was debatable whether these were real inconsistencies, depending upon how one interpreted ambiguities in both the memoranda and the testimony. Moreover, the asserted inconsistencies went to details and the major portions of the memoranda were consistent with Bryant's testimony. We agree with the trial judge that in these circumstances it would have been unfair and extremely confusing to the jury not to admit the memoranda.[5] The memoranda were thus admissible under Rule 106 of the Federal Rules of Evidence.[6] Although the trial court did not rely explicitly on that Rule, the reasons he expressed support its application. Since as a matter of law it was not error to admit the evidence, the order should be affirmed even if the district court relied on a different ground. *Zbaraz v. Quern,* 596 F.2d 196, 202 n. 19 (7th Cir. 1979).

■ Additionally, we agree with the district court that the memoranda were admissible under Rule 801(d)(1)(B). Clearly they come within the literal terms of that exception to the hearsay rule. The real question is whether they should have been excluded as irrelevant under Rule 402. We agree with the defendant that if Bryant had the same motive to falsify at the time he prepared the memoranda, they would add nothing to his testimony. Here the defense contends that the intent to frame defendant was formed from the very beginning of the scheme, that the memoranda were simply part of that plan, and that they are therefore irrelevant to refute the defense's allegation of improper motive. The witness testified that the memoranda were prepared for legitimate tax purposes and the district court apparently credited this account[7] (Tr. 977, 978, 985–986). The memoranda themselves, of course, reveal nothing of their author's motivation.

Defendant relies heavily on *United States v. Quinto,* 582 F.2d 224 (2d Cir. 1978), for the proposition that when a defendant attacks prosecution testimony and a consistent prior memorandum prepared by the

4. 4 J. Weinstein & M. Berger, Evidence, Sec. 801(d)(1)(B)[0] at 801–100 (1977).

5. When defense counsel objected to the admission of the memoranda, the court commented:
    "You used them wherever it was advantageous * * *.
        "At this stage of the game there was no objection to them. If those documents aren't now part of the record in this case, the poor jury is never going to be able to evaluate the cross examination * * *." (Tr. 938–939.)

6. Rule 106 provides:
    *"Remainder of or Related Writings or Recorded Statements*
        "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

7. It may well be true as defense counsel point out, that the Internal Revenue Service would not have accepted Bryant's self-documentation of what he did with $200,000 cash. While this might tend to discredit Bryant's testimony that he wrote the memoranda to create a record for legitimate tax purposes, other objective evidence discredited the defense theory that defendant was the victim of an elaborate frame-up (Tr. 982).

prosecution as being part of a single scheme to inculpate him, the memorandum is not admissible evidence. *Quinto* would not in any event control this case because of many factual differences. Importantly, the defendant in *Quinto* had made no attempt to use the memorandum for impeachment of the prosecution's witnesses.[8] The fact question of whether the motive to falsify existed at the time the memoranda were prepared may well be one for the jury, and here the defense vigorously presented its fabrication theory throughout the trial.[9] We need not reach that question however, because here the cross-examination at least implied that Bryant first fabricated his story when he was accused of appropriating the money in April 1976 (over a year after the last memorandum was written) or that the improper motive (self-exculpation) first arose at that time.[10] The jury might well have inferred that this was what one defense counsel was suggesting from his emphasis at the beginning of his cross-examination on the fact that Bryant had never implicated defendant until he himself was accused, did not bring the memoranda with him to the April 1976 meeting and hesitated before naming defendant as the recipient of the money. Numerous cases have held that the charge of recent fabrication or improper motive need not be express. *United States v. Rinn, supra; United States v. Williams, supra; United States v. Lanier, supra.* The

fact that defense counsel may not have intended to imply that Bryant's story was fabricated beginning in April 1976 is irrelevant if that inference fairly arises from the line of questioning he pursued. To the extent the jury could have inferred that the defendant was suggesting that Bryant first concocted his story in April 1976, the memoranda which were nearly contemporaneous with the events in question were admissible to rebut that implication under Rules 801(d)(1)(B) and 402.

Thus the contents of the memoranda were admissible for several reasons. We cannot conclude that admitting the memoranda themselves was reversible error in the circumstances of this case. The district court indicated that giving the memoranda to the jury was preferable to reading them into evidence to expedite the case (Tr. 824). Numerous other documents were also before the jury. Most importantly, the case turned on whether the jury believed that Bryant had concocted the whole story, including the memoranda. If the jurors had believed that defense theory, it is inconceivable that they would have been swayed by reading the self-serving memoranda.

*The Refusal To Give A Requested Instruction Was Not Reversible Error.*

■ Defendant's final argument is that the trial court erred in first representing that it would give a version of the "false in

---

**8.** Other differences between *Quinto* and the present case include the fact that the memorandum in *Quinto* was potentially more prejudicial than those involved here because it was prepared by an Internal Revenue Service agent and recounted in extraordinary detail his version of an interview with defendant in which defendant purportedly admitted that his intention had been "to screw the government out of some cash." The trial court initially excluded the memorandum. However, after the defendant made a general attack on the agent's credibility and produced witnesses who contradicted the agent's testimony in other respects, the judge *sua sponte* admitted the memorandum. In this case the memoranda were prepared by a witness, not by a government agent, and the defendant was clearly warned that an attack on the credibility of the witness based on the memoranda might well necessitate their being admitted.

**9.** The trial court would still have discretion to exclude such evidence under Rule 403 of the Federal Rules of Evidence when in the circumstances of a particular case—as in *Quinto*—the probative value of the evidence was outweighed by the danger of unfair prejudice.

**10.** In *United States v. McPartlin,* 595 F.2d 1321, 1351 (7th Cir. 1979), we refused to admit a prior consistent statement under Rule 801(d)(1)(B) because the motive to falsify also existed at the time of the prior statement. *McPartlin* is distinguishable from this case because there the prior consistent statement was not made until two years after the event it purported to explain, there was no suggestion that defendant's consistent explanation offered at trial was recently fabricated, and no reason to believe that the prior statement was motivated by anything other than self-exculpation.

one, false in all" instruction[11] and then refusing to do so after defense counsel had based his closing argument on the expecta-·tion of that instruction. This assertedly was a violation of Rule 30 of the Federal Rules of Criminal Procedure, which provides that a judge shall inform counsel of the instructions he intends to give before closing arguments. However, as the cases cited by defendant demonstrate, such a failure to comply with Rule 30 constitutes reversible error only if it impairs the effectiveness of the defense. *Wilkerson v. Meskill,* 501 F.2d 297 (2nd Cir. 1974); *United States v. Dichiarinte,* 385 F.2d 333 (7th Cir. 1967).

 We are convinced that the defendant was not seriously misled as to the instructions that would be given and that in any event the effectiveness of the defense was not impaired. In the conference regarding instructions prior to closing arguments, Judge Will indicated that he would "talk" his instructions to the jury, rather than reading them. He then indicated that he would give substantially the instruction from Section 3.05 without stating that he intended to omit the third paragraph. However, earlier in the trial when defense counsel had objected to the court's curtailing their pursuit of certain inconsistencies in Bryant's testimony about details, Judge Will stated

> "You are trying to show that Mr. Bryant is a liar, and I am suggesting to you that the understandable misrecollections about infinitesimal details, doesn't make a man a liar, and you are not going to make him a liar—I am going to instruct this jury to the extent they find

discrepancies between present and prior recollection, they must not automatically assume that the witness' testimony is therefore not believable, because we know that erroneous recollection as well as total failure of recollection are ordinary common human phenomenon *[sic]* \* \* \*." (Tr. 966.)

Therefore defense counsel were clearly on notice of the type of instruction that was to be given. Moreover, the charge included a lengthy instruction on credibility in which the court repeatedly told the jury that a witness could be impeached by many different factors and that the testimony of a witness so impeached need not be credited. Defense counsel's closing argument had emphasized the theory that Bryant had completely fabricated the story. We see nothing in Judge Will's instructions that would undermine this theory. Essentially the judge told the jurors that they could find from inconsistencies in Bryant's testimony and failures of recollection as well as from other factors that his testimony was totally unworthy of belief, but that they were not required to find that he was lying solely on the basis of differences in recollections over details.[12]

While it would have been preferable for the trial court to state more explicitly the instructions he intended to give, defendant suffered no prejudice in this case. The judgment is affirmed.

---

**11.** The disputed instruction is part of Section 3.05 of the instructions reprinted in 27 Federal Rules Decisions. That instruction reads:

"A witness may be discredited or impeached by contradictory evidence; or by evidence that at other times the witness has made statements which are inconsistent with the witness's present testimony.

"If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you think it deserves.

"If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves."

The trial judge's omission of the third paragraph of Section 3.05 is the basis of appellant's claim.

**12.** Clearly the judge thought that he had given substantially the instruction agreed upon (Tr. 3216).