UNITED STATES of America,
Plaintiff-Appellee,

v.

Yvonne HARRIS and Josephine Harris,
Defendants-Appellants.

Nos. 84–1184, 84–1199.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1985.

Decided May 2, 1985.

Robert B. Breisblatt, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Jeffrey S. Blumenthal, John A. Meyer, Chicago, Ill., for defendants-appellants.

Before BAUER and POSNER, Circuit Judges, and JAMESON, Senior District Judge.*

BAUER, Circuit Judge.

Defendant Josephine Harris was found guilty by a jury of forging CETA eligibility questionnaires and time sheets, submitting those documents for payment to the Archdiocese of Chicago, which operated the CETA program, and illegally receiving government funds pursuant to the Comprehensive Employment and Training Act of 1973, 29 U.S.C. § 801 *et seq.* (1983), in violation of Sections 371, 665(a), and 1001

---

* Honorable William J. Jameson, Senior District Judge for the District of Montana, is sitting by designation.

of Title 18 of the United States Code. The court sentenced her to three years imprisonment to be followed by five years probation and ordered her to make restitution in the amount of $150,000. The jury also convicted co-defendant Yvonne Harris of violating Sections 371 and 1001 and the court sentenced her to fifteen months imprisonment to be followed by five years probation. Both defendants appeal the jury's verdict.

## I. FACTS

From 1978 through 1980, the Archdiocese of Chicago administered the Saint Charles Luwanga Lifeline Center in Chicago. The Center was financed by funds which the Archdiocese received from the United States Department of Labor under the Comprehensive Employment and Training Act of 1973 (CETA) to operate employment programs for poor youths. Katie Stanley, a co-defendant who is not a party to this appeal, was head supervisor at the Center. Stanley's job responsibilities included ensuring that participants in the employment program signed their work time sheets, collecting the signed time sheets and forwarding them to the Archdiocese for payment, and receiving paychecks from the Archdiocese to distribute to the program's participants.

Josephine Harris worked at the Center from 1978 to 1980 as an administrative assistant to Stanley. Her duties included helping youths prepare CETA job applications, filing participants' time sheets, and distributing paychecks to participants. Yvonne Harris did not work in the CETA program at the Center, but occasionally helped her mother, Josephine Harris, finish her work at the Center by signing time sheets for "participants" in the CETA program. Yvonne Harris testified at trial that she only signed time sheets for handicapped CETA participants who could not sign the time sheets themselves.

The evidence at trial showed that fictitious social security numbers were used on applications to the CETA program and that Yvonne Harris's medicaid card number was used in over sixty applications. Because eligibility for the program was based on federal poverty guidelines, possession of a medicaid card issued by the Illinois Department of Public Aid provided proof of eligibility. The evidence also showed that Stanley, Josephine Harris, and Yvonne Harris signed time sheets for individuals who were not participants in the CETA program, that Stanley and Josephine Harris submitted those time sheets to the Archdiocese for payment, and that all three defendants forged endorsements on the paychecks which the Archdiocese issued to the fictitious individuals and forwarded to the Center. Stanley would then cash the paychecks at a local currency exchange or with a local merchant whom she knew. The scheme was eventually uncovered by special agents of the United States Department of Labor, and defendants were subsequently tried and convicted.

## II. EVIDENTIARY RULINGS

Defendant Josephine Harris alleges that the trial court committed reversible error in two of its evidentiary rulings. First, Harris contends that the trial court erred by limiting the cross-examination of a government witness, Brother Edmund Baran, concerning an investigation by the Archdiocese of possible fraud in its CETA program. On direct examination, Brother Baran testified that he had spoken to Katie Stanley regarding allegations of fraud in the CETA program as part of the investigation, and that he submitted a report to the Archdiocese incorporating Stanley's statements to him. Baran concluded in the report that no fraud had occurred, and the investigation was discontinued. On cross-examination, defense counsel attempted to question Brother Baran as to why the Archdiocese's investigation was discontinued, but the government's objection to this testimony was sustained. Josephine Harris argues that this ruling left the jury with the faulty impression that Stanley, by deceiving Baran, was responsible for halting the investigation as part of the defendants' conspir-

acy, resulting in unfair prejudice to all the defendants.

■ A trial court's evidentiary rulings will not be reversed on appeal absent a clear showing of abuse of discretion. *United States v. Cannon,* 715 F.2d 1228, 1232 (7th Cir.1983) (citing *United States v. West,* 670 F.2d 675, 684 (7th Cir.), *cert. denied sub nom., King v. United States,* 457 U.S. 1124, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982)). Pursuant to Rule 611(b) of the Federal Rules of Evidence, "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." *See West,* 670 F.2d 684; *United States v. Spatuzza,* 331 F.2d 214, 217 (7th Cir.), *cert. denied,* 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38 (1964). We hold that the trial judge did not abuse his discretion by ruling that the testimony which Josephine Harris sought to elicit from Brother Baran was beyond the scope of the direct examination, and therefore excludable.

We first note that the defense objected when the government began questioning Brother Baran about the report during its case-in-chief. Tr. at 72. At a side-bar conference, the government stated that the testimony was being offered to show Katie Stanley's knowledge of the investigation and to infer that because she was not implicated by the investigation she was able to continue her fraudulent conduct. Tr. at 73. The testimony was admitted on that basis. Tr. at 74.

On cross-examination, counsel for Josephine Harris attempted to elicit testimony from Brother Baran as to why the investigation was discontinued, and the government objected. The trial judge ruled that this line of inquiry was irrelevant because the fact that the investigation was discontinued was at issue, not the reasons for the discontinuance. Tr. at 124. Moreover, the trial judge had not permitted the government to ask questions which would infer that Katie Stanley had lulled

the Archdiocese into dropping the investigation as part of the conspiracy. Tr. at 123–24. Therefore, the testimony which Josephine Harris sought to elicit was beyond the scope of the prior direct examination, and the trial court did not commit reversible error by excluding it. *See United States v. Stubin,* 446 F.2d 457, 464 (3d Cir.1971) (trial judge properly excluded questioning irrelevant to prior direct examination).[1]

Josephine Harris also contends that the trial court erred in allowing Agent John Huheey to testify about statements made to him by a previous government witness, Harold Branch, during the course of the government's investigation of the fraud. Branch had been called as a witness by the government and had testified as to his knowledge of Josephine Harris's involvement in the scheme to defraud the CETA program. Later, Harris called Agent Huheey as a witness to impeach Branch and elicited testimony that he had interviewed Branch on June 18, 1979, and that during that interview Branch had made statements which contradicted his testimony at trial. On cross-examination, the government was allowed to elicit testimony from Agent Huheey, over defendant Harris's objection, about statements made by Branch during the June 18 interview which were consistent with Branch's testimony at trial. Harris contends that the trial court incorrectly admitted this testimony as a prior consistent statement by Branch to rebut the implication that Branch had fabricated his testimony at trial.

■ Rule 801(d)(1)(B) of the Federal Rules of Evidence provides that a prior statement is not excludable as hearsay, and may be offered for the truth of the matter asserted therein, when two requirements are met. First, the declarant must testify at trial and must be subject to cross-examination concerning the statement. Second, the statement must be consistent with the declarant's testimony and must be offered

---

1. The defendant was not precluded from calling Brother Baran as its own witness and pursuing this line of inquiry on direct examination, as-

suming it was not inadmissible for other grounds, such as relevancy.

to rebut an express or implied allegation of recent fabrication or improper influence or motive. The case law imposes a further requirement that in order to be admissible a prior consistent statement must also have been made before the motive to fabricate existed. *See, e.g., United States v. Feldman,* 711 F.2d 758, 766 (7th Cir.1983); *United States v. Quinto,* 582 F.2d 224, 232–33 (2d Cir.1978). The reasoning underlying this additional requirement is that when the motive to fabricate exists at the time the prior consistent statement is made, that statement is not relevant to a rebuttal of an allegation of recent fabrication. In other words, evidence which merely shows that the declarant said the same thing at trial as he did on a prior occasion is of no probative value to rebut an allegation of recent fabrication when the declarant's motive in making both statements was the same "for the simple reason that mere repetition does not imply veracity." *United States v. McPartlin,* 595 F.2d 1321, 1351 (7th Cir.1979) (quoting 4 J. WEINSTEIN & M. BERGER, EVIDENCE ¶ 801(d)(1)(B)[01] at 801–117–18 (1981)). The prior statement would be relevant to rebut a charge of recent fabrication only if it had been made before the motive to fabricate arose. Thus, although a prior consistent statement may meet the literal requirements of Rule 801(d)(1)(B), it may nonetheless be inadmissible for failure to meet the relevancy requirement of Rule 402.

Rule 801(d)(1)(B) allows a proponent to offer into evidence a prior consistent statement to prove the truth of the matter which the declarant asserts in that statement. The government contends in this case, however, that Agent Huheey's testimony of Branch's prior statements was not offered for the truth of the matters asserted therein. Rather, the government contends that the testimony was elicited solely to rehabilitate Branch's testimony. Specifi-

cally, the government states that because the defendants called Agent Huheey as a witness to impeach the credibility of Branch's testimony by showing inconsistencies between that testimony and Branch's statements to Agent Huheey during the interview of June 18, 1978, it sought to rehabilitate Branch's credibility by showing the degree of consistency of Branch's testimony with his earlier statements. Thus, Huheey's testimony was offered merely to show that Branch had not made only inconsistent statements prior to his testimony at trial, and therefore those statement were not excludable as hearsay and were not subject to the requirements of Rule 801(d)(1)(B).

Josephine Harris argues that regardless of the government's purpose in offering the prior consistent statements, the motive to fabricate must not have existed at the time the statements were made or they are inadmissible, citing *United States v. Quinto,* 582 F.2d 224 (2d Cir.1978), as support.[2] It is now settled, however, that this condition need not be met to admit into evidence prior consistent statements which are offered solely to rehabilitate a witness rather than as evidence of the matters asserted in those statements. *See United States v. Parodi,* 703 F.2d 768, 785 (4th Cir.1983); *United States v. Parry,* 649 F.2d 292, 296 (5th Cir.1981); *United States v. Rubin,* 609 F.2d 51, 66 (2d Cir.1979) (Friendly, J., concurring), *affirmed on other grounds,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *United States v. Scholle,* 553 F.2d 1109, 1121–22 (8th Cir.), *cert. denied,* 434 U.S. 960, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *United States v. Juarez,* 549 F.2d 1113, 1114 (7th Cir.1977).

In *Juarez* we addressed a situation closely analogous to the facts before us now and held that prior consistent statements offered for the limited purpose of rehabilitating a witness's credibility were not sub-

---

**2.** In addition to *Quinto,* defendant cites two cases from this circuit, *United States v. Guevara,* 598 F.2d 1094 (7th Cir.1979), and *United States v. McPartlin,* 595 F.2d 1321 (7th Cir.1979), to support her argument that the trial judge erred in admitting the testimony. In both *Guevara*

and *McPartlin,* however, the government argued that the prior consistent statements were admissible under Rule 801(d)(1)(B). These cases therefore do not address the issue in this case of when prior consistent statements are admissible outside the scope of Rule 801(d)(1)(B).

ject to the strictures of Rule 801(d)(1)(B). 549 F.2d at 1114. The prior consistent statements in *Juarez* were admitted into evidence because they related to the witness's credibility, and were therefore relevant. They were not excludable as hearsay because they were not offered for the truth of the matters which they asserted. *Id.* at 1114. This use of prior consistent statements for rehabilitation is particularly appropriate where, as here, those statements are part of a report or interview containing inconsistent statements which have been used to impeach the credibility of the witness. Prior consistent statements which are used in this matter are relevant to whether the impeaching statements really were inconsistent within the context of the interview, and if so, to what extent. *See Rubin,* 609 F.2d at 70; *United States v. Baron,* 602 F.2d 1248, 1252 (7th Cir.), *cert. denied,* 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979). This rehabilitative use of prior consistent statements is also in accord with the principle of completeness promoted by Rule 106. *See Rubin,* 609 F.2d at 70; *Baron,* 602 F.2d at 1252. *See also, Juarez,* 549 F.2d at 1114.

■ Although the prior consistent statements were no doubt helpful in rebutting any implication that Branch had fabricated his testimony, the government did not offer those statements to prove the truth of the matters asserted in the statements, and therefore the restrictions of Rule 801(d)(1)(B) and the requirement that the motive to fabricate must not exist at the time the statements were made do not apply. This difference in purpose may seem unrealistically subtle in light of the effect a jury may be inclined to give the statements,[3] but it is permissable for a jury to consider the extent of the inconsistencies in determining the credibility of the witness. *Juarez,* 549 F.2d 1114 (cautionary instructions given to jury to consider statements

only in deciding credibility, not facts in case).

The language in the trial record is somewhat ambiguous as to the precise grounds for the trial judge's ruling, Tr. 600–02, but it is apparent that the trial judge admitted the testimony solely for the purpose of rehabilitating Branch's testimony, not for the truth of the matters asserted under Rule 801(d)(1)(B). Regardless of this ambiguity, it was not an error at law to admit the testimony, and therefore the ruling should be affirmed even if the district court relied on a different ground to admit the evidence. *See Baron,* 602 F.2d at 1252 (citing *Zbaraz v. Quern,* 596 F.2d 196, 202 n. 19 (7th Cir.1979)).

### III. SEVERANCE

Josephine Harris contends that the trial court committed reversible error by denying her motion for severance. She moved for severance under Rule 14 of the Federal Rules of Criminal Procedure when Yvonne Harris decided to testify. At the time Yvonne Harris's counsel informed the court of her decision to testify, the trial was already well underway. Josephine Harris argues that Yvonne Harris's testimony established a mutually antagonistic defense, and that therefore the trial judge improperly denied her motion for severance.

■ Under Rule 12(b)(5) of the Federal Rules of Criminal Procedure, a motion for severance is subject to denial as untimely if it is not made before trial. The trial court has a continuing duty to grant severance, however, if it appears during trial that the failure to grant severance will result in undue prejudice to one of the defendants. *United States v. Dinneen,* 463 F.2d 1036, 1042 (10th Cir.1972) (quoting *Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960)). Here, a motion for severance was made when it

---

**3.** See WEINSTEIN J., and M. BERGER, EVIDENCE ¶ 801(d)(1)(B)[01] pp. 801–116–17 and accompanying footnotes (1984). Judge Weinstein cites a comment to the California Evidentiary Code which states that

It is not realistic to expect a jury to understand that it cannot believe that a witness is telling the truth on a former occasion even though it believes that the same story given at the hearing is true.

appeared to counsel for Josephine Harris that prejudice might result from the testimony of Yvonne Harris. In order to prevail on the motion Josephine Harris was required to make a showing that substantial prejudice would result from denial of the motion. *United States v. Craig,* 573 F.2d 455, 480 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978) (citations omitted). Substantial prejudice may ·be proved by showing that a co-defendant's defense is "mutually antagonistic;" that is, that the acceptance of a co-defendant's version of the facts precludes acquittal of the defendant. *United States v. Petullo,* 709 F.2d 1178, 1181–82 (7th Cir.1983); *United States v. Ziperstein,* 601 F.2d 281, 285 (7th Cir.1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980).

Upon review, we will reverse a trial court's denial of a motion for severance only if the trial court clearly abused its discretion. *United States v. Oxford,* 735 F.2d 276, 279 (7th Cir.1984); *United States v. Moschiano,* 695 F.2d 236, 246 (7th Cir.1982), *cert. denied,* — U.S. —, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983); *Ziperstein,* 601 F.2d at 286. We find that the trial court did not abuse its discretion in denying Josephine Harris's motion for severance. Josephine Harris's theory of defense was that she had never signed any time sheets for any of the CETA program's participants. Yvonne Harris testified that she and her mother signed time sheets only for participants who could not sign the time sheets themselves because they were physically handicapped. The jury's acceptance of this testimony as true would not have precluded an acquittal of Josephine Harris, and therefore Yvonne Harris did not present a mutually antagonistic defense which would require severance.

Josephine Harris further argues that she was substantially prejudiced by comments made by counsel for Yvonne Harris during closing argument to the effect that Yvonne Harris lied in her testimony to protect her mother. Initially, we note that no objection was made to the supposedly prejudicial comments made by Yvonne Harris's counsel, and therefore we need not even consider this argument. *See United States v. Banks,* 687 F.2d 967, 973 (7th Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1208, 75 L.Ed.2d 448 (1983). Suffice it to say, however, that the comments made by counsel for Yvonne Harris in his closing argument did not seek to exculpate Yvonne Harris by incriminating Josephine Harris, but rather sought to explain Yvonne Harris's apparent discomfort and evasiveness on the witness stand by arguing that "she wanted to admit the truth, that she did sign time sheets, [but] she loves her mother [and] had to be protective over her mother." Tr. 843. In view of the substantial, if not overwhelming, evidence that Josephine Harris did sign time sheets for CETA participants, including the testimony of a handwriting expert and eyewitnesses who saw her signing time sheets, it cannot be said that these statements had a substantial prejudicial effect on Josephine Harris's defense. *Accord United States v. Hutul,* 416 F.2d 607, 621 (7th Cir.1969), *cert. denied,* 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (1970) (reversal not required where counsel's argument to jury is not directed negatively toward other defendants but is designed to bolster defendant's own defense). Therefore,. the trial court's refusal to grant severance was not an abuse of discretion.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Yvonne Harris contends that her counsel's comments during closing argument which were discussed above denied her the effective assistance of counsel, thereby violating her sixth amendment rights. The Supreme Court recently set forth the applicable standard for determining claims of ineffective assistance of counsel in *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* held that in order to prevail on such a claim, a defendant must show that his counsel's actions or omissions at trial "fell below an objective standard of reasonable-

ness," 104 S.Ct. at 2065–66, and that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. In applying the first prong of this test, the Court stated that

> [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct fails within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 2065–66. Yvonne Harris's claim of ineffective assistance of counsel fails to meet either requirement of the standard enunciated in *Strickland.*

■ As noted above, the comments which Yvonne Harris contends deprived her of effective assistance of counsel were evidently an attempt to explain to the jury her apparent discomfort and evasiveness on the witness stand. At the sentencing hearing the trial judge stated that it was obvious that Yvonne Harris was lying on the witness stand and that "confronted with that accomplished fact, the obvious strategy judgment that [defense counsel] made ... was to try to defuse the effect that [her] testimony had." Sentencing Tr. at 20. Moreover, counsel's comments were not tantamount to an admission of guilt as Yvonne Harris now suggests. Viewed in the context of the entire closing argument,

the tenor of counsel's comments might best be summarized by his statement to the jury that Yvonne Harris "was not totally honest with you, but that doesn't mean that she is guilty. She was not the only [witness] who was not totally honest with you." Tr. 84.

Evaluating counsel's statements during closing argument from his perspective at the time the statements were made, it appears that counsel was faced with the choice of relying solely on his client's dubious testimony or attempting to show that, despite this testimony, his client was nonetheless not guilty. We cannot say that his choice of the latter strategy was unreasonable. Similarly, we do not believe that, but for these statements, a reasonable probability exists that the outcome at trial would have been different. Substantial evidence linked Yvonne Harris to the scheme to defraud the CETA program, the most damaging of which may have been her own testimony. Counsel's closing argument was an attempt to mitigate the negative effect of that testimony, and it is apparent that a failure to address in some way Yvonne Harris's evasiveness on the witness stand would have been detrimental to her defense. Therefore, we hold that Yvonne Harris has failed to meet either prong of the standard enunciated in *Strickland.*

## V. SENTENCING

Both Josephine and Yvonne Harris contend that in determining their sentences the trial judge improperly penalized them for exercising their constitutional right to trial. In support of this contention, defendants cite a statement made by the trial judge at the sentencing hearing referring to the cost of the prosecution and also point out that a co-defendant who pleaded guilty prior to trial received a lesser sentence. Yvonne Harris also argues that she improperly received a harsher sentence based on the court's belief that she perjured herself at trial.

■ A sentence which is within the limits established by the statute under which it is imposed will not be vacated upon re-

view unless the sentencing judge relied upon improper considerations or unreliable information in exercising his discretion or failed to exercise any discretion at all in imposing the sentence. *United States v. Zylstra*, 713 F.2d 1332, 1340 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983) (citations omitted). Both defendants' sentences are well below the maximum penalty which the trial court was empowered to impose.[4] Therefore, our review is limited to whether the trial judge based the sentences on improper considerations or failed to exercise any discretion in imposing the sentences.

■ The trial judge's statement which defendants allege indicates that they were penalized for going to trial is contained in the following discourse, which was directed toward the defendants:

> So, you know, what you did here has an impact beyond the more than $150,000—how much more I don't know—that was stolen from poor black children in Chicago. It creates untold potential harm for poor people everywhere.
>
> And, of course, we have a far greater total cost, in a sense, although I have to tell you it doesn't begin to compare, in that we have the cost of the government investigation, we have the cost of prosecution that itself involves an enormous expenditure of dollars that also would have been better spent elsewhere.

Sentencing Tr. 18. We do not believe that these statements show that the trial judge improperly considered the cost of prosecution in sentencing the defendants or evinced a belief that the cost of the prosecution was "wasted on convicting somebody whom the court thought should not have taken their case to trial," as defendants assert. Josephine Harris Br. 31. Rather, we believe that the trial judge was merely attempting to apprise the defend-

ants of the full magnitude of their crime, which included the cost to society of trial. As the trial judge noted, the cost of prosecution "doesn't begin to compare" with the money "that was stolen from poor black children in Chicago," and there is no indication that the former was considered in imposing sentence. This conclusion is buttressed by the trial judge's subsequent statement to Yvonne Harris that "everybody has a constitutional right to go to trial on a criminal charge. Nobody in this court ever receives a more severe sentence for having exercised that right rather than pleading guilty." Sentencing Tr. 20.

■ Defendants' contention that they were penalized for exercising their right to go to trial because a co-defendant who pleaded guilty received a lesser sentence also fails. Disparity between the sentence imposed on a defendant who pleads guilty and the sentence imposed on a defendant who is convicted after trial does not, standing alone, establish that the latter has been penalized for exercising his constitutional rights. *United States v. Fields*, 689 F.2d 122, 128 (7th Cir.), *cert. denied*, 459 U.S. 1089, 103 S.Ct. 573, 74 L.Ed.2d 935 (1982); *United States v. Peskin*, 527 F.2d 71, 87 (7th Cir.1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976). Defendants have merely shown that they received harsher sentences than a co-defendant who pleaded guilty. Without more, they have failed to show any constitutional violation.

■ Finally, Yvonne Harris contends that she improperly received a harsher sentence based on the trial court's belief that she lied on the witness stand. A defendant's truthfulness while testifying is indicative of his attitudes toward society and his prospects for rehabilitation. *United States v. Grayson*, 438 U.S. 41, 52, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978). Thus, a trial judge may consider this factor in determin-

---

**4.** The maximum sentence and fine under 18 U.S.C. § 371 is five years and/or $10,000; under 18 U.S.C. § 665(a) it is two years and/or $10,000; and under 18 U.S.C. § 1001 it is five years and/or $10,000. Josephine Harris was convicted of one count of violating Section 371, four counts of violating Section 1001. She was

sentenced to three years imprisonment and five years probation. She was also required to pay $150,000 as a condition of her probation. Yvonne Harris was convicted of one count of violating Section 371 and one count of violating Section 1001. She received a sentence of fifteen months imprisonment and five years probation.

ing the sentence to be imposed and may enhance a defendant's sentence if he believes that the defendant testified falsely. 438 U.S. at 55, 98 S.Ct. at 2618. Therefore, the trial judge did not err in considering the truthfulness of Yvonne Harris's testimony at the sentencing hearing.

## VI. RESTITUTION

Josephine Harris contends that the trial court exceeded its authority under 18 U.S.C. § 3651 by ordering her to make restitution in the amount of $150,000 as a condition of her probation. She argues that in ordering restitution as a condition of probation a sentencing court is limited to either the amount of the loss alleged in the indictment, which was $100,620 in this case, or the amount of loss proved at trial, which was $132,914.56. Although several early cases construing Section 3651 provide some support for defendant's assertion, see *Karrell v. United States*, 181 F.2d 981, 987 (9th Cir.), *cert. denied*, 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646 (1950); *United States v. Follette*, 32 F.Supp. 953, 955 (E.D. Pa.1940), we do not believe that it comprehensively states the law as it exists today, and we hold that the district court did not abuse its discretion by ordering defendant to repay the government $150,000.

■ Section 3651 provides, in pertinent part, that as a condition of probation a defendant "[m]ay be required to make restitution ... to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." 18 U.S.C. § 3651 (1983). The amount of restitution must be definite and may not exceed the amount of loss actually caused. *See, e.g., United States v. Lynch*, 699 F.2d 839, 845 (7th Cir.1982); *United States v. Hoffman*, 415 F.2d 14, 22–23 (7th Cir.), *cert. denied*, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969). In *United States v. Gering*, 716 F.2d 615 (9th Cir.1983), the Ninth Circuit surveyed the case law in this area and determined that the amount of loss caused by the offense may be proved in one of three ways: by proof at trial, by judicial determination, or through the consent of

the defendant. 716 F.2d at 625 (citations omitted). We believe that the case law supports the Ninth Circuit's analysis.

■ Defendant's assertion that the amount of restitution must be limited to either the amount of loss alleged in the indictment or proved at trial was specifically rejected as too narrow an interpretation of Section 3651 by the Fourth Circuit in *United States v. McMichael*, 699 F.2d 193 (4th Cir.1983). The Fourth Circuit stated that

actual damages directly caused by the illegal activity with which a defendant is charged may be ordered to be repaid under the Probation Act whenever the amount of the loss is legally determined. This is the rule regardless of the amount charged in the full indictment or in the individual counts on which a defendant is convicted.

699 F.2d at 195. The Fourth Circuit upheld the district court's order of restitution because the amount of loss was certain and there was no dispute that the defendant's actions were the cause of the loss. *Id.*

■ In this case the amount of restitution which Josephine Harris was ordered to pay was for a sum certain and did not exceed the government's actual loss resulting from the offense of which she was convicted. The trial judge determined the amount of restitution based on the evidence presented at trial and in the presentence investigation report of the government's actual loss due to the fraud. Sentencing Tr. 5, 18, 20. This judicial determination of the amount of loss was proper. *See United States v. John Scher Presents, Inc.*, 746 F.2d 959, 963 (3d Cir.1984) (amount of restitution may be for such amount of actual damages as has been ascertained with certainty by the trial court); *United States v. Roberts*, 619 F.2d 1, 2 (7th Cir.1979) (trial judge determined amount of actual damages caused by defendant). *Accord Phillips v. United States*, 679 F.2d 192, 194 (9th Cir.1982); *United States v. Tiler*, 602 F.2d 30, 32–33 (2d Cir.1979). Moreover, counsel for Josephine Harris did not dispute the amount of loss, but stated at the

sentencing hearing that "it could well be that there was $150,000 misappropriated or embezzled from the program." Sentencing Tr. 5.

In *Lynch, supra,* this circuit upheld an order of restitution in the amount requested by the government where the government established losses which were not challenged by the defendant. 699 F.2d at 845–46. Similarly, in *United States v. Higdon,* 627 F.2d 893 (9th Cir.1980), the Ninth Circuit held that an order requiring defendant to forfeit all his assets was permissible, stating that "[a]lthough the record is not entirely clear ... the amount of loss appears to be approximately $500,000. If the value of [defendant's] assets were in excess of the government's loss, it was up to [defendant] to assert that fact." 627 F.2d at 899 n. 14. We therefore find that the trial judge did not abuse his discretion in ordering Josephine Harris to pay the government $150,000 as a condition of her probation.

For the reasons stated above, the convictions and sentence of Josephine and Yvonne Harris are affirmed.

AFFIRMED.